780 So.2d 922 (2001)
STATE of Florida, Department of Agriculture, Appellant,
v.
SUN GARDENS CITRUS, LLP; Zipperer Farms II, a Florida general partnership; Zipperer Farms of Florida, Inc., a Florida corporation; and John O. Zipperer, Jr., an individual, Appellees.
No. 2D00-3149.
District Court of Appeal of Florida, Second District.
January 31, 2001.
*924 Raoul G. Cantero, III, and Jack R. Reiter of Adorno & Zeder, P.A., for Appellant.
Gordon H. Harris and Bruce M. Harris of Gray, Harris & Robinson, P.A., Orlando, for Appellee Sun Gardens Citrus, LLP.
Jodi L. Corrigan and Robert L. Rocke of Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, for Appellees Zipperer Farms II, Zipperer Farms of Florida, Inc., and John O. Zipperer, Jr.
PARKER, Acting Chief Judge.
The State Department of Agriculture (the Department) appeals the trial court's entry of a temporary injunction prohibiting it from acting on an Immediate Final Order (IFO) to destroy citrus trees infected with citrus canker and requiring the Department to treat Sun Gardens Citrus, LLP (Sun Gardens), a lessee under an unrecorded lease agreement, as a "property owner" for purposes of the notice provisions concerning the destruction of trees affected by citrus canker. We reverse.
Citrus canker is a bacteria infecting citrus fruit. Although citrus canker is not known to be harmful to humans or animals, it is very harmful to citrus plants. It causes premature fruit to drop, may blemish the fruit and make it unmarketable, and may cause Florida citrus to be quarantined by the federal government, which prohibits its export to other citrus-producing states and countries. Citrus canker spreads rapidly and can be transmitted by wind, water, tree clippings, fruit, or even the clothing of workers or field inspectors. See Department of Agric. & Consumer Servs. v. Polk, 568 So.2d 35, 44 (Fla.1990). Recognizing the possibly devastating effect of citrus canker on the citrus industry, the Department declared citrus canker a plant pest and developed procedures to eradicate citrus canker within the state. See Fla. Admin. Code R. 5B-58.001(2), (3). When the State's initial conservative attempts to eliminate citrus canker failed, it upgraded its efforts considerably. The Citrus Canker Risk Assessment Group has determined that, in order to assure at least 99% eradication, all trees within 1900 feet of canker-infested trees must be destroyed.
In early June 2000, the Department inspected citrus groves owned by Zipperer Farms of Florida, Inc., and Zipperer Farms II (collectively Zipperer). The inspection revealed that trees on the property were infected with the Asian strain of citrus canker, which is one of the most destructive. On July 17, 2000, the Department issued an IFO to Zipperer, advising it that the Department had discovered citrus canker on Zipperer's property and that all infected and exposed trees would be destroyed within five days as mandated by Florida Administrative Code Rule 5B-58.001(5)(c). Rule 5B-58.001(5) states in pertinent part:
(c) Immediate Final Orders. The department shall issue an Immediate Final Order stating the quarantine and control methods to be implemented on the infected or exposed citrus located on the property. A copy of the citrus canker diagnostic report, inventory, map, and recommendation referred to above will be attached to each respective Immediate Final Order. The Immediate Final Order will be provided to each property owner. If provided by personal delivery, the person making the delivery of the Immediate Final Order shall note on the Order the date and time of delivery, the name of the recipient of the Order and the name of the person delivering the Order. If provided by mail, the Immediate Final Order shall be sent certified mail return receipt requested.... If the property owner is in agreement and signs the waiver accompanying the Immediate Final Order, control measures in accordance with risk assessment procedures shall proceed. If the property owner refuses to sign the waiver, then control measures mandated by risk assessment procedures shall begin no sooner than five days from the property *925 owner's receipt of the Immediate Final Order.
Zipperer did not contest the IFO. However, on July 20, Sun Gardens, which leases portions of Zipperer's property pursuant to an unrecorded lease agreement, filed a complaint and motion for temporary injunction against the Department and Zipperer, arguing that it had a right to be heard in connection with the Department's decision. Sun Gardens challenged neither the discovery of citrus canker nor the Department's ultimate authority to destroy the trees. Instead, Sun Gardens argued that it was a "property owner" under rule 5B-58.001(5)(c) and that, even though it received a faxed copy of the IFO, it did not receive a copy by hand-delivery or certified mail, as the rule requires.[1] Sun Gardens argued that the IFO was defective due to the Department's failure to follow its own rules and sought an injunction forbidding the Department to act until it had complied with its own rules.
Following a hearing, the trial court entered the injunction, finding that Sun Gardens was a "property owner" as that term is used in rule 5B-58.001(5)(c), and that as a "property owner," Sun Gardens was entitled to notice under the rule. The trial court concluded that the IFO would be deemed delivered to Sun Gardens as of the day of the hearing and prohibited the Department from destroying the infected trees until five days later.[2] The Department appealed, challenging the trial court's interpretation of the term "property owner" in rule 5B-58.001(5)(c).

NOTICE TO PROPERTY OWNER
The Department first contends that the trial court erred in finding that lessees qualify as "property owners" under the notice provisions of the Florida Administrative Code relating to citrus canker eradication. The Department asserts that it has always interpreted the term "property owner" to mean the land owner or owners holding legal title to the property as reflected in the public records of the county at issue, and it argues that the trial court improperly imposed its own interpretation of the term in this case. The Department is correct on this issue.
Trial courts must afford great deference to an agency's or department's interpretation of a rule it promulgated concerning matters that are administered by that agency or department. See Legal Envtl. Assistance Found., Inc. v. Board of County Comm'rs of Brevard County, 642 So.2d 1081, 1083 (Fla.1994); Pan Am. World Airways, Inc. v. Florida Public Serv. Comm'n, 427 So.2d 716, 719 (Fla. 1983). In explaining the level of deference required, the United States Supreme Court stated:
When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.... The court need not conclude that the agency construction was the *926 only one it permissively could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.... If [the agency's] choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.
Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844-45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (emphasis added). Under Chevron, once a court determines that the legislature has not directly addressed the issue, the only question is whether the agency's interpretation of its own rule is a reasonable one. Id. at 845, 104 S.Ct. 2778. See also Bowles, Price Adm'r v. Seminole Rock & Sand Co., 325 U.S. 410, 413-14, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); Legal Envtl. Assistance Found., 642 So.2d at 1084. "[I]f an agency's interpretation of its own regulation is merely one of several reasonable alternatives, it must stand even though it may not appear as reasonable as some other alternative." Pan Am., 427 So.2d at 719-20.
In this case, the Department is charged by statute with administering Florida's citrus canker eradication program. See §§ 581.021, .031, .184, Fla. Stat. (2000). The statutes do not include any provisions concerning notice prior to the destruction of trees or crops due to citrus canker. Thus, Florida's legislature has not spoken to this precise issue. Because the statutes are silent, the question for the trial court was whether the Department's interpretation of its own rule is reasonable. If the Department's interpretation is reasonable, the trial court is not permitted to impose a different interpretation on the Department.
In this case, the Department's interpretation is reasonable. The rule at issue states that the Department will provide the IFO concerning a particular grove to each "property owner." See Fla. Admin. Code R. 5B-58.001(5)(c). The Department has consistently interpreted the term "property owner" to mean the land owner holding legal title to the property as reflected in the public records of the county at issue.[3] This is clearly a reasonable interpretation of the undefined term "property owner." Therefore, the trial court should not have imposed its own interpretation of the term in deciding whether the Department had complied with its own rules.
Sun Gardens basically argues that it is more reasonable to interpret the term "property owner" to include any entity holding any interest in the land, trees, and/or crops covered by the IFO. While this is also a reasonable interpretation, the Department's interpretation of its own rule must stand when it is one of several reasonable alternatives. See Pan Am., 427 So.2d at 719-20. The fact that Sun Gardens' interpretation may seem "more reasonable" under the circumstances is irrelevant.
We conclude that the trial court erred in imposing its own interpretation of the term "property owner" on the Department rather than deferring to the Department's interpretation of the term. Therefore, we reverse the order finding that Sun Gardens was entitled to notice as a "property owner" under the Department's rules, and we reverse the temporary injunction.

EXHAUSTION OF ITS ADMINISTRATIVE REMEDIES
In the alternative, the Department argues that the trial court should not have entered the injunction in favor of Sun Gardens because Sun Gardens sought judicial intervention in the wrong forum and did not exhaust its administrative remedies before *927 seeking judicial intervention. The Department is correct on this issue as well.
First, Sun Gardens sought relief in the incorrect court. Section 120.68, Florida Statutes (2000), governs judicial review of agency action. It allows any party adversely affected by final agency action to seek judicial review of that action. See § 120.68(1), Fla. Stat. (2000). The statute also allows for judicial review of nonfinal agency action if review of the final agency action would not provide an adequate remedy. Id. When a party seeks judicial review under this statute, it must do so in the district court of appeal where the agency has its headquarters or where the party seeking review resides. See § 120.68(2)(a), Fla. Stat. (2000).
In this case, Sun Gardens was seeking judicial review of an IFO, alleging that the IFO was ineffective because the Department did not follow its own rules concerning notice. Regardless of whether the IFO constituted final agency action or nonfinal action for which final action would not provide an adequate remedy,[4] Sun Gardens' right to judicial review rested in this court rather than the circuit court. Therefore, the trial court should not have entertained Sun Gardens' complaint or motion for injunction.
Sun Gardens contends that the circuit court had jurisdiction to entertain its action because the circuit court has jurisdiction to hear declaratory judgment actions brought under chapter 86, Florida Statutes. See § 120.73, Fla. Stat. (2000) (noting that nothing in chapter 120 shall be construed as eliminating the right to proceed in circuit court in an action under chapter 86). However, Sun Gardens' complaint does not seek relief pursuant to chapter 86. First, the complaint does not state that it is being brought pursuant to chapter 86. Rather, the eighth paragraph of the complaint states: "This court has jurisdiction pursuant to Florida Statutes § 26.012 and Florida Administrative Code 558.001(5)(c)." Second, the complaint does not seek a declaration of Sun Gardens' rights or status. Rather, the first paragraph of the complaint states that "[t]his is an action for damages and injunctive relief," and the "wherefore" clause of the count against the Department seeks an order prohibiting the Department from destroying Sun Gardens' property and an award of attorneys' fees and costs. Had the complaint sought a declaration that Sun Gardens was a "property owner" under the Department's rules, this argument might be viable. However, Sun Gardens cannot change the entire nature of its complaint after the fact in an attempt to avoid the clear provisions of section 120.68(2). Therefore, the Department is correct that the circuit court did not have jurisdiction to grant Sun Gardens injunctive relief.
Second, Sun Gardens was not entitled to judicial review until it exhausted its administrative remedies. Sun Gardens contends that case law supports its right to have the IFO reviewed by the circuit court without first exhausting its administrative remedies. This argument is without merit. In Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153, 158 (Fla.1982), the supreme court held that a party seeking to challenge the unconstitutional application of an admittedly constitutional statute or rule must first exhaust all administrative remedies. See also Sapp Farms, Inc. v. Department of Agric. & Consumer Servs., 761 So.2d 347, 348 (Fla. 3d DCA 2000) (noting that while section *928 120.569, Florida Statutes, contemplates the possibility of injunctive relief from the circuit court, it does not eliminate the requirement that a party exhaust its administrative remedies prior to seeking such relief). This is to ensure that "the responsible agency has had a full opportunity to reach a sensitive, mature, and considered decision upon a complete record appropriate to the issue." Key Haven, 427 So.2d at 158. However, a party may seek circuit court relief for injuries arising from an agency decision which the party accepts as correct. Id.
In this case, Sun Gardens alleges that the Department's interpretation and application of its own rule denied Sun Gardens' due process and equal protection rights. Because Sun Gardens was challenging the unconstitutional application of an admittedly constitutional rule, under Key Haven Sun Gardens was required to exhaust all administrative remedies prior to seeking judicial review. Since it failed to do so, the trial court should not have granted the requested relief. While Sun Gardens could have sought relief in the circuit court for injuries arising out of the Department's decision, to do so it would have to accept the Department's decision as correct. This Sun Gardens has refused to do. Because Sun Gardens did not exhaust its administrative remedies prior to seeking judicial relief and because Sun Gardens does not accept the Department's action as proper, the trial court erred in entertaining Sun Gardens' complaint and in granting the relief requested.
We conclude that the Department is correct on both issues it has raised in this appeal. We therefore reverse and remand this case to the trial court.
FULMER, J., concurs.
CASANUEVA, J., concurs specially.
CASANUEVA, J., Concurring.
I concur with that portion of the majority opinion that holds that Sun Gardens improperly sought judicial intervention before exhausting its administrative remedies. Because that determination means that the trial court should have dismissed Sun Gardens' complaint and motion for temporary injunction, it is not necessary for this court to reach the injunction issue. For that reason, and another as I will explain below, I do not join in that aspect of the majority opinion reversing the injunction on the merits.
In this instance, the Department asserts it is not required under its own administrative rule to notify Sun Gardens of the IFO's issuance. The IFO issued in this case mandates the destruction of citrus producing trees owned by Sun Gardens but growing on property Sun Gardens does not hold record title to but merely leases under an unrecorded lease. Sun Gardens developed and has possession of the real estate pursuant to this unrecorded lease. The factual record is clear that the Department dealt with Sun Gardens and had knowledge of Sun Gardens' ownership of the citrus trees sufficiently in advance of the IFO to give Sun Gardens notice of the order. It declined to do so based upon its interpretation of its own rule which mandated that only the record title owner of the real property was entitled to notice of the administrative order.
Rule 5B-58.001, titled "Citrus Canker Eradication," defines a number of terms including "citrus," "commercial citrus grove," "exposed," and "infected." It is clear that the thrust of the rule is to quarantine areas exposed to the citrus canker disease and, where necessary, to destroy those trees and plants actually or likely to be infected. The rule provides for the destruction of trees and plants, not real estate.
The Department fashioned this rule pursuant to the grant of legislative authority found in section 581.184(2), Florida Statutes (2000), which directed it to promulgate rules identifying the circumstances under which plants and trees may be destroyed for the purpose of controlling or *929 eradicating citrus canker disease. While operating pursuant to this legislative authorization regarding plants and trees which might be destroyed, a rule resulted whereby the very owner of the plants and trees in question is not required to be given notice of an order of destruction, unless the plants or tree owner is likewise the owner of the underlying real estate. On the other hand, in all instances, the owner of the real property, whether or not the owner of the challenged plants or trees, is given notice. This strikes me as somewhat askew.
The majority finds the Department's interpretation of its rule to be reasonable. Because I do not conclude it is necessary to reach that issue, I make no such determination. I will say, however, that as the legislative focus was on citrus plants, it seems reasonable to conclude that an owner of the species of property known as citrus plants is entitled to notice of their impending destruction where, as here, the Department had actual knowledge of the plants' owner. Unlike the Department's actions, the trial court's order provided Sun Gardens a measure of fundamental fairness and due process.
NOTES
[1] Although Sun Gardens advanced additional arguments challenging the IFO, the trial court's order granting the motion for temporary injunction addressed only the question of whether Sun Gardens was a "property owner" for notice purposes.
[2] Although the infected trees in this case were destroyed after five days, the issue is not moot because of other cases pending in Florida trial courts.
[3] This court need not address the issue of whether a lessee under a recorded lease is entitled to notice as a "property owner" because it is undisputed that Sun Gardens did not record its lease.
[4] It would appear that an IFO would constitute final agency action. See § 120.569(2)(n), Fla. Stat. (2000) (noting that if an agency head finds that an immediate danger to public health, safety, or welfare requires an IFO, the IFO shall be appealable or enjoinable from the date rendered). However, further administrative review could have been requested by Sun Gardens. See, e.g., § 120.569(2), Fla. Stat. (2000) (allowing any party whose substantial interests are determined by an agency to seek a hearing before an administrative law judge). Regardless of whether the IFO is characterized as final or nonfinal agency action, review of the IFO would be in the district court of appeal under section 120.68.