792 So.2d 539 (2001)
FLORIDA DEPARTMENT OF AGRICULTURE & CONSUMER SERVICES and Bob Crawford, in his official capacity as Commissioner of the Florida Department of Agriculture and Consumer Services, Appellants/Cross-Appellees,
v.
CITY OF POMPANO BEACH, a municipal corporation of the State of Florida; Cesar delCampo and Linda delCampo; Town of Davie, a muncipal corporation of the State of Florida; Arthur and Marsha Joseph; Michael Bender; Katherine Cox; Toby Bogorff; City of Coconut Creek, a municipal corporation; Robert R. Bazyk; James N. Henry; Town of Southwest Ranches, a municipal corporation of the State of Florida; Donald and Gretta Pickney; Lily Sayre; City of Plantation, a municipal corporation of the State of Florida; Broward County, a political subdivision of the State of Florida; Patricia and John Haire; City of Margate, a political subdivision of the State of Florida; Caroline Seligman; Cooper City, a municipal corporation of the State of Florida; and Frank Mendola, Appellees/Cross-Appellants.
No. 4D00-4116.
District Court of Appeal of Florida, Fourth District.
July 11, 2001.
*541 Arthur J. England, Jr., Elliot H. Scherker and Elliot B. Kula, Miami and Jerold I. Budney of Greenberg Traurig, PA, Fort Lauderdale, for appellants/cross-appellees.
Gordon B. Linn, City Attorney, and William J. Bosch, Assistant City Attorney, Pompano Beach, for Appellee/Cross-Appellant-City of Pompano Beach.
Edward A. Dion, Broward County Attorney and Andrew J. Meyers, Chief Appellate Counsel, Tamara M. Scrudders and Jose Arrojo, Assistant County Attorneys, Fort Lauderdale, for Appellee/Cross-Appellant-Broward County.
Jamie A. Cole of Weiss, Serota, Helfman, Pastoriza & Guedes, PA, Fort Lauderdale, for Appellee/Cross-Appellant-City of Dania Beach.
Monroe D. Kiar, Davie, for Appellee/Cross-Appellant-Town of Davie.
Daniel L. Abbott, Hollywood City Attorney, Hollywood, for Appellee/Cross-Appellant-City of Hollywood.
Keith M. Poliakoff of Becker & Poliakoff, Fort Lauderdale, for Appellee/Cross-Appellant-Town of Southwest Ranches.
Donald L. Lunny, Jr. and Veronica Vilarchao of Brinkley, McNerney, Morgan, Solomon & Tatum, LLP, Fort Lauderdale, for Appellee/Cross-Appellant-City of Plantation.
James A. Cherof and Michael D. Cirullo of Josias, Goran, Cherof, Doody & Ezrol, PA, Fort Lauderdale, for Appellee/Cross-Appellant-City of Coral Springs.
Eugene M. Steinfeld, Margate, for Appellee/Cross-Appellant-City of Margate.
John and Patricia Haire, Fort Lauderdale, pro se.

ON MOTION FOR CLARIFICATION AND/OR TO CERTIFY CONFLICT
HAZOURI, J.
We deny the appellee's motion to certify conflict, grant appellee's motion for clarification, withdraw our opinion filed June 20, 2001, and substitute the following opinion in its place.
Citrus canker was discovered in Florida in 1914 and eradication programs continued through the mid 1930s. In the mid 1980s, an Asian strain of citrus canker, xanthomonas axonopodis pv.citri., the strain of citrus canker at issue in this case, was discovered in Manatee County. It was considered eradicated in 1992 and the eradication program halted in 1994. However, in 1995 an outbreak was discovered around the Miami International Airport.
Citrus canker is a disease that is caused by a bacterial organism that attacks the fruits, leaves and stems of a citrus plant. It causes defoliation, fruit drop and loss of yield. It also causes blemishes on the fruit and a loss of quality. In severe cases, it can cause girdling of the stems and death of the tree.
Stem lesions can survive for many years and are capable of producing bacterial inoculum *542 eight to ten years later. Although symptoms of citrus canker may be seen seven to fourteen days after infection, the maximum visualization does not occur until approximately 107 to 108 days after infection. This makes it difficult to control a disease which easily spreads through winddriven rain or contamination of equipment or plant material.
According to the Florida Department of Agriculture and Consumer Services (Department), citrus canker would have an immediate impact on the fresh citrus industry which comprises twenty-five percent of the commercial citrus industry, amounting to two billion dollars in losses if not eradicated. If it continues to spread, a federal quarantine could be placed on the state. The quarantine would effectively shut down the distribution of fresh citrus products to other states or internationally.
At the time that citrus canker, Asian strain, was discovered in Miami, the citrus canker eradication program in place called for the destruction of trees that were infected or were within a 125 foot radius of an infected tree. The 125 foot radius was adopted in the 1980s as a result of a study conducted in Argentina. However, that study did not take into account what would happen in an urban setting.
In Miami-Dade County, the destruction of citrus trees within a 125 foot radius of an infected tree was not reducing the occurrences of citrus canker. Therefore, the Department decided to initiate a study that would measure the distances that citrus canker, Asian strain, would spread in South Florida.
The study kept track of over 19,000 trees in four sites and determined the distance between the diseased trees and the newly infected trees. The study showed that the eradication program which used the 125 foot radius was inadequate because it only captured about thirty to forty-one percent of infection that spread from a diseased tree.
The results of the study were presented at a meeting in Orlando attended by approximately twenty individuals and scientists. Those at the meeting examined the findings. After considering a range of distances between diseased trees and newly infected trees at the various sites, those present determined that in order to destroy ninety-five percent of newly infected trees, it was necessary to destroy trees within a 1900 foot radius of a diseased tree, thereby creating a buffer zone which would prevent citrus canker from spreading any further.
In March 1999, the Citrus Canker Technical Advisory Task Force, a body of regulatory individuals, scientists and citrus industry representatives who deal with the issue of citrus canker, unanimously recommended that the Department adopt a policy to destroy trees within a 1900 foot radius of a diseased tree in order to eradicate citrus canker.
On January 1, 2000, Commissioner Bob Crawford adopted the recommendation of the task force and the 1900 foot buffer zone policy became effective. In September 2000, pursuant to the policy, its enabling statutes and rule 5B-58.001, the Department began issuing immediate final orders (IFOs)[1] to property owners who *543 either have a tree infected with citrus canker or have a tree within a 1900 foot radius of an infected tree. The IFOs are either hand delivered to the affected property owner or posted on his or her front door.
On September 29, 2000, the Department promulgated an emergency rule[2], amending the procedure set forth for issuing immediate final orders in rule 558.001(5)(c).[3]See 5BER 00-4, 26 Fla. Admin. Weekly 4502 (Sept. 29, 2000). In October, 2000, the IFO was revised. The subsequently revised IFO reorganizes how the information was presented in the initial IFO.
On October 27, 2000, the City of Pompano Beach, the Town of Davie, the City of Coconut Creek, the Town of Southwest Ranches, the City of Plantation, Broward County, the City of Margate, and named residents of each municipality (Appellees)[4] filed a complaint for declaratory and injunctive relief and a claim for inverse condemnation against the Florida Department of Agriculture and Consumer Services (Department) and its Commissioner, Bob Crawford. The complaint sought a declaratory judgment pertaining to Appellees' rights with regards to the Department's rules, regulations, interpretations, and enforcement methods under Florida's citrus canker eradication program.
The complaint challenged the validity of: (1)the eradication program which requires the destruction of trees infected with citrus canker or within 1900 feet of a tree *544 infected with citrus canker (1900 foot buffer zone policy), and (2)Emergency Rule 5BER 00-4, establishing an expedited procedure for issuing IFOs for the destruction of trees. The complaint alleged that the eradication program deprives property owners (those who are scheduled to have their trees destroyed or who may be scheduled to have their trees destroyed) of their property without compensation or due process and constitutes an unconstitutional seizure of property. The complaint also alleged that the eradication program is arbitrary and capricious and not supported by scientific evidence.
The Department moved to dismiss the complaint for failure to exhaust administrative remedies. Following a hearing on the motion, the trial court determined that whether or not the court should intervene is an issue of policy, not jurisdiction, and the need for expediency in the instant case is hindered by the Department "saying go through the APA mechanism before you get into the judicial arena." The trial court denied the motion to dismiss and set the case for an evidentiary hearing.
At the evidentiary hearing, various experts testified to the history of citrus canker, how it is spread and the resulting consequences should it not be eradicated. Three witnesses, two of whom were named plaintiffs, testified to receiving IFOs. Cesar del Campo testified that he received both the initial IFO and revised IFO, but did not want his trees destroyed. Carolyn Seligman testified that she found out her trees were scheduled for removal when two men from the Department came to remove her trees. The Department asserted that an IFO had been posted on her door. She acknowledged that she may have received an IFO, not realized what it was and thrown it away. After calling the Department, confirming that her trees were scheduled for removal and receiving another IFO, she successfully obtained a stay from this court preventing the destruction of her trees. John Haire testified that he called the Department's hotline to find out if his tree was scheduled for removal. The Department informed him that his tree would be removed because it was within 1825 feet of an infected tree. The Department subsequently delivered an IFO to him.
After considering the evidence, the trial court entered a final judgment permanently enjoining the Department from cutting down healthy citrus trees in Broward County, which have no visible symptoms of canker but which are located within 1900 feet of a citrus tree infected with citrus canker. The trial court based its decision on the following findings and conclusions:
 The establishment of the 1900 foot host-free buffer zone is a "rule" as defined in the Administrative Procedure Act (APA), which the Department failed to formally adopt pursuant to the rulemaking procedures of the APA.
 The Department exceeded its delegated authority by defining "exposed" in its Emergency Rule in a manner inconsistent with the legislature's definition of "exposed to infection" as set forth in section 581.184, Florida Statutes (2000).
 The IFO violates procedural due process, and, therefore, is unconstitutional.
Among other issues raised on appeal, the Department argues that the circuit court erred when it denied its motion to dismiss for failure to exhaust administrative remedies under the APA, Chapter 120, Florida Statutes (2000). We agree.
Appellees challenged the IFOs issued by the Department. They argue that section 120.68, Florida Statutes (2000), *545 does not provide an avenue of judicial review, because they have not been adversely affected by agency action. The argument is premised on the contentions that they have either received IFOs which do not provide actual notice that their trees will be destroyed or they have yet to receive an IFO. This argument is without merit. The issuance of an IFO constitutes final agency action. The challenge to the issuance of an IFO should have been brought before this court pursuant to section 120.68, Florida Statutes (2000).
If a property owner has not been issued an IFO, then there is nothing to challenge. Appellees' counsel suggested during oral argument that some property owners received IFOs which authorized the Department to immediately cut down trees without providing the property owners with an opportunity to appeal this action. However, there was no evidence adduced at trial which supports this assertion.[5]
Section 120.68 governs judicial review of agency action. Dep't of Agric. v. Sun Gardens Citrus, LLP, 780 So.2d 922, 927 (Fla. 2d DCA 2001). The statute clearly provides that judicial review of both final agency action and nonfinal agency action, if review of the final agency action would not provide an adequate remedy, shall be sought in the district court of appeal where the agency has its headquarters or where the party seeking review resides. See § 120.68(2)(a), Fla. Stat. (2000); Sun Gardens Citrus, 780 So.2d 922, 927.
Appellees also challenged the Department's failure to comply with the APA. The Department's failure to comply with the APA was raised below with regards to whether (1) the 1900 foot buffer zone policy violates section 120.54, Florida Statutes (2000), because it is a rule that was not promulgated according to rule making procedures, and (2) the Department exceeded its delegated authority when it promulgated rule 5B-58.001.
These challenges should have been brought before the Division of Administrative Hearings. Section 120.56(4)(a), Florida Statutes (2000), provides, "Any person substantially affected by an agency statement may seek an administrative determination that the statement violates s. 120.54(1)(a) .... and that the agency has not adopted the statement by the rulemaking procedure provided by s. 120.54." Furthermore, pursuant to section 120.56(1)(a), Florida Statutes (2000), "Any person substantially affected by a rule or a proposed rule may seek an administrative determination of the invalidity of the rule on the ground that the rule is an invalid exercise of delegated legislative authority."
Thus, both sections 120.68 and 120.56 set forth administrative remedies which Appellees failed to exhaust. Generally, where administrative remedies are available, it is improper to seek relief in the circuit court before those remedies are exhausted. Schl. Bd. of Flagler County v. Hauser, 293 So.2d 681 (Fla.1974); Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 689 So.2d 1127, 1129 (Fla. 1st DCA 1997); Fla. Dep't of Envtl. Prot. v. PZ Constr. Co., Inc., 633 So.2d 76, 78 (Fla. 3d DCA 1994).
Appellees correctly argue that there are three exceptions to the exhaustion doctrine. Although none are applicable in this case, we address each individually.
First, declaratory and injunctive relief in circuit court is available "where *546 the party seeking to bypass usual administrative channels can demonstrate that no adequate remedy remains available under Chapter 120." Gulf Pines Mem'l Park, Inc. v. Oaklawn Mem'l Park, Inc., 361 So.2d 695, 699 (Fla.1978); see also Junco v. State Bd. of Accountancy, 390 So.2d 329, 331 (Fla.1980).
In Bankers Insurance Co., the First District correctly set forth the criteria that must be met before an administrative remedy is considered inadequate:
(1) the complaint must demonstrate some compelling reason why the APA (Chapter 120, Florida Statutes) does not avail the complainants in their grievance against the agency; or (2) the complaint must allege a lack of general authority in the agency and, if it is shown, that the APA has no remedy for it; or (3) illegal conduct by the agency must be shown and, if that is the case, that the APA cannot remedy that illegality; or (4) agency ignorance of the law, the facts, or public good must be shown and, if any of that is the case, that the Act provides no remedy; or (5) a claim must be made that the agency ignores or refuses to recognize related or substantial interests and refuses to afford a hearing or otherwise refuses to recognize that the complainants' grievance is cognizable administratively.
Bankers Ins. Co., 689 So.2d 1127, 1129 (citing Comtys. Fin. Corp. v. Fla. Dep't of Envtl. Regulation, 416 So.2d 813, 816 (Fla. 1st DCA 1982)).
Appellees did not make any such allegations in their complaint. Furthermore, the trial court did not find that any of the criteria were met.
Appellees argue that they cannot possibly obtain meaningful review of the Department's decision to issue an IFO, because (1) Emergency Rule 5BER 00-4 does not provide that review of the decision to issue an IFO can be sought with the Department, and (2) the IFO does not set forth the factual basis on which it is based and without a record an appellate court would presume that the Department's decision is correct.
Review of the Department's decision to issue an IFO is not obtained pursuant to Emergency Rule 5BER 00-4, but rather pursuant to section 120.68, Florida Statutes (2000). Section 120.68(3) authorizes district courts to grant a stay of agency action. Section 120.68(7) provides, "The court shall remand a case to the agency for further proceedings ..., when it finds that: (a)There has been no hearing prior to agency action and the reviewing court finds that the validity of the action depends upon disputed facts ..." Therefore, pursuant to section 120.68, Appellees should have sought judicial review in this court This court could have then stayed the Department's decision to remove the trees and remanded the case to the Department for further proceedings.[6]
A second exception to the exhaustion doctrine exists where "an agency acts without colorable statutory authority that is clearly in excess of its delegated powers," Fla. Dep't of Envtl. Reg. v. Falls Chase Special Taxing Dist., 424 So.2d 787, 796 (Fla. 1st DCA 1982); see also Fla. Dep't of Revenue v. Brock, 576 So.2d 848, 850 (Fla. 1st DCA 1991). This narrow exception is inapplicable, where the agency's *547 assertion of authority has apparent merit or depends upon some factual determination. Id.
Appellees claim that the Department exceeded its authority when it adopted the 1900 foot buffer zone policy. However, the Department's assertion of authority as set forth in section 581.031, Florida Statutes (2000), has apparent merit. Section 581.031(6) gives the Department the authority to "declare a plant pest... a nuisance as well as any plant or other thing infected therewith or that has been exposed to infestation or infection and is therefore likely to contaminate other plants or things." (Emphasis added). Section 581.031(17) authorizes the Department to destroy plants capable of harboring plant pests to prevent or control the dissemination of or to eradicate plant pests. Moreover, the issues in this case dealing with whether the Department exceeded its authority depend upon factual determinations, including an examination of scientific studies concerning the spread of citrus canker. Thus, the Department clearly had colorable statutory authority.
Third, circuit courts have the power, in all circumstances, to consider constitutional issues. Key Haven Associated Enters., Inc. v. Bd. of Trs. of the Internal Improvement Trust Fund, 427 So.2d 153, 156-57 (Fla.1982), superseded on other grounds, Bowen v. Fla. Dep't of Envtl. Regulation, 448 So.2d 566 (Fla. 2d DCA 1984). In Key Haven, the supreme court set forth the appropriate standards for circuit court review of constitutional challenges to agency rules and statutes implemented by an agency. The court held:
If the statute being implemented by an agency is claimed to be facially unconstitutional, the circuit court may, in appropriate circumstances, entertain a declaratory action on the statute's validity....
. . . .
When the facial unconstitutionality of an agency rule is the focus of an aggrieved party's constitutional claim, the administrative proceedings must be exhausted and the claim presented to the district court....
... The executive branch has the duty, and must be given the opportunity, to correct its own errors in drafting a facially unconstitutional rule. As a matter of policy, therefore, a circuit court should refrain from interfering in the administrative process since a remedy for a facially unconstitutional rule can be fashioned within that process.

The final category of constitutional challenge is the claim that an agency has applied a facially constitutional statute or rule in such a way that the aggrieved party's constitutional rights have been violated. This type of challenge would involve the assertion that an agency's implementing action was improper because, for example, the agency denied the party the rights to due process or equal protection. A suit in the circuit court requesting that court to declare an agency's action improper because of such a constitutional deficiency in the administrative process should not be allowed. As well articulated by Judge Smith in the instant case, administrative remedies must be exhausted to assure that the responsible agency "has had a full opportunity to reach a sensitive, mature, and considered decision upon a complete record appropriate to the issue." Key Haven, 400 So.2d at 69. We also agree with the instant district court decision that, sitting in their review capacity, the district courts provide a proper forum to resolve this type of constitutional challenge because those courts have the power to declare the agency action improper and to require *548 any modifications in the administrative decision-making process necessary to render the final agency order constitutional. A party may, however, seek circuit court relief for injuries arising from an agency decision which the party accepts as intrinsically correct, as illustrated in this case.
Key Haven, 427 So.2d at 157-58 (citations omitted) (emphasis added).
In this case, Appellees' constitutional challenges fall within the final category. Appellees have not asserted that any of the statutes on which the Department relies are facially unconstitutional or that the agency has implemented a facially unconstitutional rule. Appellees assert that the Department has applied facially constitutional statutes in such a way that their constitutional right to procedural and substantive due process has been denied. Moreover, Appellees do not concede that the Department's decisions are intrinsically correct.
Pursuant to the decision in Key Haven, Appellees were required to exhaust all administrative remedies, including seeking review in this court, before making these constitutional challenges. See also Sun Gardens Citrus, 780 So.2d 922, 927-28 (concluding that circuit court erred when it granted appellee's request for an injunction preventing the Department from destroying its trees, where appellee failed to exhaust administrative remedies and sought judicial intervention in the wrong forum); Sapp Farms, Inc. v. Fla. Dep't of Agric. & Consumer Servs., 761 So.2d 347, 348 (Fla. 3d DCA 2000)(fact that an alternative judicial remedy such as seeking an injunction in circuit court is recognized by the APA does not mean that the exhaustion requirement may be dispensed with).
In summary, Appellees' right to judicial review rested in this court or in the Division of Administrative Hearings, rather than in the circuit court. The circuit court erred when it denied the Department's motion to dismiss for failure to exhaust administrative remedies. Accordingly, the circuit court's judgment is reversed and the case remanded with directions to vacate the injunction and dismiss the claim for injunctive and declaratory relief for failure to exhaust administrative remedies. The claim for inverse condemnation is pending below and is not the subject of this appeal.
Because we find the circuit court erred when it denied the Department's motion to dismiss, we do not address the remaining issues on appeal and cross-appeal, including whether the 1900 foot buffer zone policy is an unpromulgated rule, which the Department is required to adopt as a rule pursuant to the rulemaking procedures of the APA.
REVERSED.
GUNTHER and KLEIN, JJ. concur.
NOTES
[1] An IFO constitutes final agency action with regards to the recipient property owner. The IFO informs recipients that the citrus trees on their property will be destroyed, they have 30 days to appeal the action and sets forth the procedure for appealing the action. The IFO also states that although the Department has the authority to immediately remove the trees, no trees will be cut earlier than five calendar days from the date the IFO is received. Additionally, the IFO provides the history of citrus canker, Asian strain, in South Florida and the reasons why it is harmful.
[2] The emergency rule declares that citrus canker, Asian strain, is a destructive bacterial disease of citrus that will severely impact the state if not eradicated. See 5BER00-4, 26 Fla. Admin. Weekly 4502 (Sept. 29, 2000). It further provides that citrus canker presents an immediate serious danger to the public health, safety or welfare and declares that an emergency to the agricultural and horticultural interests of this state exists. Id.
[3] As amended, rule 5B-58.001(5)(c), provides:

The Department shall issue an Immediate Final Order stating the quarantine and control methods to be implemented on the infected or exposed citrus located on the property. It may be delivered in person, by mail or similar common carrier, or posted on the property. Immediate Final Orders are not required for control action in commercial citrus groves provided the owner agrees voluntarily to the control action and enters into an agreement not to sue with the department.
The amendment added the language "it may be delivered in person, by mail or similar common carrier, or posted on the property" and deleted the following language from Rule 5B-58.001(5)(c):
A copy of the citrus canker diagnostic report, inventory, map, and recommendation referred to above will be attached to each respective Immediate Final Order. The Immediate Final Order will be provided to each property owner. If provided by personal delivery, the person making the delivery of the Immediate Final Order shall note on the order the date and time of the Order and the name of the person delivering the Order. If provided by mail, the Immediate Final Order shall be sent certified mail return receipt requested. The Immediate Final Order shall be immediately appealable or enjoinable. If the property owner is in agreement and signs the waiver accompanying the Immediate Final Order, control measures in accordance with risk assessment procedures shall proceed. If the property owner refuses to sign the waiver, then control measures mandated by risk assessment procedures shall begin no sooner than five days from the property owner's receipt of the Immediate Final Order.
[4] The named municipalities filed this civil action on behalf of themselves as the owners of citrus trees and as class representatives of any and all residents and property owners who own citrus trees within their respective jurisdictions. Their standing to file this action was not challenged below and is not raised on appeal. The named residents of each municipality allege that they have received IFOs.
[5] Furthermore, the IFOs which were in effect at the time suit was filed informed the recipient of a 30 day period for appeal and that no trees will be cut earlier than five calendar days from the date the IFO is received.
[6] Notably, in Sapp Farms, Inc. v. Fla. Dep't of Agric. & Consumer Servs., 761 So.2d 347 (Fla. 3d DCA 2000), appellant unsuccessfully sought injunctive relief from the issuance of an IFO in circuit court. After the circuit court dismissed the action for lack of jurisdiction, the Third District was still able to determine that the IFO was lawfully issued to appellant.