PER CURIAM.
This non-final appeal involves another issue in the citrus canker litigation. In Florida Department of Agriculture & Consumer Services v. City of Pompano Beach, 792 So.2d 539, 541-42 (Fla. 4th DCA 2001), we detailed the history of the citrus canker eradication efforts in Florida. In Florida Department of Agriculture & Consumer Services v. Haire, 836 So.2d 1040 (Fla. 4th DCA), rev. granted, 842 So.2d 844 (Fla.2003), we considered the constitutionality of 2002 citrus canker legislation.
This ease involves review of an order granting temporary injunctive relief. The department is enjoined from destroying any citrus trees in Miami-Dade, Broward, or Palm Beach counties based on tree *612 samples collected prior to the date of the court’s order. Any samples collected after the order are to be in accordance with the procedures outlined by the trial court’s order at issue herein.[1] The trial court found that the department’s existing methodology did not assure compliance with section 581.184, Florida Statutes, in that the department was not using its stated methodology, and that such methodology, even if followed, would not achieve the goal of eradication. We conclude that Appel-lees were required to exhaust administrative remedies and, therefore, reverse the order granting temporary injunctive relief.
Section 581.184 defines a citrus tree exposed to infection as one located within 1,900 feet of an infected tree.[2] Before the legislature’s enactment of section 581.184, in 2002, the 1900 foot buffer zone was a “rule” adopted by the department in accordance with the Administrative Procedure Act as an “emergency rule.” See 5BER00-4, 26 Fla. Admin. Weekly 4502 (Sept. 29, 2002). That rule was the subject of this court’s decision in City of Pompano Beach, 792 So.2d at 539.
The trial court in City of Pompano Beach concluded that the department failed to properly adopt the 1,900-foot rule and that the definition of “exposed” was contrary to the legislature’s definition. Also at issue was whether the plaintiffs had failed to exhaust administrative remedies by seeking judicial review of matters concerning the “rule.” There, we reversed and held that exhaustion of administrative remedies was required. 792 So.2d at 548. Here, we reverse for the same reason.
In the earlier Haire appeal, currently pending before the Florida Supreme Court, we considered an injunction proscribing the department from relying on the legislature’s 1,900-foot destruction radius as the trial judge ruled that the 1,900-foot radius violated substantive and procedural due process. That injunction permitted only the destruction of actually infected trees, as opposed to those merely “exposed” to citrus canker.
In Haire, the trial judge determined that the report, upon which the 1,900-foot legislation was based, was not based upon reliable science or scientific methods for collecting data and, therefore, “was not constitutionally acceptable as a basis for legislative abrogation of a property owner’s right to the full panoply of protections by our State and Federal Constitutions.” 836 So.2d at 1046. This court reversed *613 and concluded that the 1,900-foot legislation was “amply supported by the scientific studies and Florida’s practical experience with citrus canker.” Haire, 836 So.2d at 1052. We further found that the legislature followed the recommendations of the scientific community to eradicate the disease and that the trial court erred in rejecting the legislative choice based upon its own view of the scientific evidence presented.[3]
This case picks up where City of Pompano Beach and Haire left off. Accepting section 581.184 in light of Haire, the trial judge, considering Appellees’ renewed request for injunctive relief, outlined the procedures for the agency to follow to properly apply the 1900 foot buffer zone to assist eradication efforts. Appellees argued that the department was diagnosing infection based on speculation not proof, that even if all necessary tests were performed the department’s reckless chain of custody practices prevented reliable diagnosis, and that even if the above was corrected, the department’s lack of quality control rendered the diagnoses unreliable. Deposition testimony from the department employees was presented to support the plaintiffs’ motion.
Pursuant to City of Pompano Beach, and our reasoning therein, Appel-lees were required to exhaust administrative remedies to challenge the department’s implementation of section 581.184. Subsection (6) provides that the department shall develop, by rule, “a statewide program of decontamination to prevent and limit the spread of citrus canker disease.”
The 2002 citrus canker law requires the department to issue an immediate final order (IFO) to each person it has determined owns a citrus tree located within 1,900 feet of a tree infected with citrus canker and must, therefore, be removed. § 581.184(2)(b), Fla. Stat. (2002). The law further requires that such an IFO must be served on the property owner and provide the owner an opportunity to appeal the IFO to the district court of appeal and obtain a stay pending review.
Whether the department has accurately diagnosed a tree as infected with canker, and properly measured the 1900-foot exposure zone from that tree, are issues to be determined in the administrative appeal of an IFO.
Appellees suggest that there will be an insufficient record to support their challenges. Section 120.68(4) provides that judicial review of any agency action shall be confined to the record transmitted and any additions made thereto in accordance with paragraph (7)(a). Pursuant to 2002 legislation, the IFO provides the location of the infected tree, the distance between the infected and exposed trees, and the underlying diagnostic report. See § 581.184(2) & (4), Fla. Stat. (2002).
That the challenges are “systemic” as characterized by the plaintiffs does not alter our analysis. The challenges in City of Pompano Beach were systemic as well. The issue requiring exhaustion there involved challenges to the emergency rule requiring the destruction of trees within the buffer zone.
The reasoning in Penelas v. Arms Technology, Inc., 778 So.2d 1042 (Fla. 3rd DCA), rev. denied, 799 So.2d 218 (2001), *614 further supports our decision. Intending to recover the costs associated with responding to firearms incidents, Miami-Dade county sued firearms manufacturers and dealers, alleging various theories of liability. The county also sought to require manufacturers to implement “lifesaving features into their products and to alter the method of firearm distribution and sale so as to better keep firearms out of criminal circulation.” Id. at 1044.
The Third District criticized the county’s use of the court’s injunctive powers to mandate the re-design of firearms and to regulate firearms and ammunition through the medium of the judiciary, but recognized that the county was frustrated with its inability to directly regulate firearms, an exercise proscribed by section 790.33, Florida Statutes, which expressly provides for the state legislature to occupy the field. Nonetheless, “the County’s frustration could not be alleviated through litigation as the judiciary is not empowered ‘to enact’ regulatory measures in the guise of injunctive relief.” Id. at 1045.
Much of the same can be said herein, where Appellees and the trial court are clearly frustrated with the department’s exercise of its statutory obligation pursuant to chapter 581. Nevertheless, the circuit court is not an “appropriate forum for resolution of disputes which are particularly within the administrative agency’s expertise.” State, Dep’t of Envtl. Prot. v. PZ Constr. Co., 633 So.2d 76, 79 (Fla. 3rd DCA 1994)(quoting Cmtys. Fin. Corp. v. Dept. of Envtl. Regulation, 416 So.2d 813, 816 (Fla. 1st DCA 1982)).
“The purpose of the exhaustion doctrine is to assure that an agency responsible for implementing a statutory scheme has a full opportunity to reach a sensitive, mature, and considered decision upon a complete record appropriate to the issue.” PZ Constr., 633 So.2d at 79. It also promotes effective implementation of policy by allowing the administrative body to adapt its rules and policies to the inequities of the individually adjudicated cases and to correct its own mistakes. See generally DeCarlo v. Town of West Miami, 49 So.2d 596 (Fla.1951); Galaxy Fireworks, Inc. v. City of Orlando, 842 So.2d 160 (Fla. 5th DCA 2003). We, therefore, reverse and remand accordingly.
STONE, POLEN and SHAHOOD, JJ., concur.

. The trial court order states:
a. Maintaining the integrity of the sample by complying, and requiring each employee handling the sample to certify such compliance, with effective chain of custody procedures; b. Performing all tests necessary to reliably diagnose and determine the subject tree is infected with Asian-strain citrus canker, including a hypersensitive reaction test (HR test), genetic (DNA) testing, and pathogenicity (host range) testing; c. Complying with written procedures which require the full and effective decontamination of all testing equipment and surfaces in between each sample, and individually certifying, for each sample, full compliance with such procedure. For a period of at least 20 days after delivery of all IFOs [immediate final orders] issued or to be issued, all paperwork and samples are to be made available for inspection to permit timely independent verification of the diagnosis, and: e. Precisely measuring, through more exacting GPS equipment, customary land surveying or through other means if approved in advance by this Court, the actual distance between the infected tree and each individual tree "exposed to the infection” and providing the precise tree-to-tree distance to each affected tree owner at the time the IFO is delivered.

. This subsection of the statute is repealed effective July 1, 2005, and will be reviewed by the legislature prior to that date. See Haire, 836 So.2d at 1046, n. 1 (citing ch.2002-11, § 4, at 314, Laws of Fla.).

. Haire held that section 581.184 was constitutional, as it neither violated substantive or procedural due process. The casé was reversed with direction to quash the temporary injunction. In light of such, the department could destroy both infected and "exposed” trees as set forth in section 581.184. The Florida Supreme Court accepted review and conducted oral argument.