873 So.2d 411 (2004)
Dr. Paul ZIMMERMAN, Dr. John W. Uribe, John Livoti, Helen Esterline, Don Reinhard, Jonathan D. Nitkin, Angela Daley, and Edna Buchanan, on behalf of themselves and all other persons similarly situated, Appellants, and
Leonard Elias, Miami-Dade County Consumer Advocate, Intervenor,
v.
FLORIDA WINDSTORM UNDERWRITING ASSOCIATION, State of Florida Department of Insurance, and Honorable Tom Gallagher in his capacity as Insurance Commissioner, Appellees.
No. 1D02-2896.
District Court of Appeal of Florida, First District.
April 20, 2004.
Rehearing Denied June 2, 2004.
*412 M. Stephen Turner, David K. Miller and Martin A. Fitzpatrick of Broad and Cassel, Tallahassee, for Appellants.
Intervenor Leonard L. Elias, pro se.
John Radey, Elizabeth McArthur and David A. Yon of Radey, Thomas and Yon, P.A., Tallahassee, for Appellee Florida Windstorm Underwriting Association.
Steven H. Parton, Florida Office of Insurance Regulation, Tallahassee, for Appellee Florida Department of Insurance.
BENTON, J.
We have for review a final summary judgment and declaration entered in an action brought in circuit court, challenging the validity of an arbitrated insurance rate increase, demanding insurance premium refunds, and seeking declaratory and injunctive relief. We affirm the trial court's refusal to order refunds and denial of injunctive relief, but reverse the judgment and declaration insofar as it declares that "the arbitration resulted in Department approval as a matter of law"; and vacate the judgment and declaration insofar as it adjudicates questions that we do not reach.
The plaintiffs below, coastal homeowners insured by defendant Florida Windstorm Underwriting Association (FWUA), proceeded as a statewide class. (Miami-Dade County Consumer Advocate Leonard Elias intervened on behalf of Dade County policyholders nevertheless.) Named as a defendant along with the Department of Insurance and the Insurance Commissioner, FWUA is an association of all insurers authorized to write property insurance in Florida, a nonprofit entity legislatively created to act as an insurer against windstorm damage for owners of residential property in Florida who cannot obtain such coverage otherwise.
When, in antecedent proceedings, a panel of three arbitrators made a decision regarding FWUA's rates under section 627.062(6), Florida Statutes (1999), the panel's decision was "treated as the final approval of a rate filing,"[1] subject only to limited review in circuit court under sections 682.13 and 14, Florida Statutes (1999). In pertinent part, section 627.062(6) provides:

*413 (a) After any action with respect to a rate filing that constitutes agency action for purposes of the Administrative Procedure Act, an insurer may, in lieu of demanding a hearing under s. 120.57, require arbitration of the rate filing. Arbitration shall be conducted by a board of arbitrators consisting of an arbitrator selected by the department, an arbitrator selected by the insurer, and an arbitrator selected jointly by the other two arbitrators.... The department and the insurer must treat the decision of the arbitrators as the final approval of a rate filing....
(b) Arbitration under this subsection shall be conducted pursuant to the procedures specified in ss. 682.06-682.10. Either party may apply to the circuit court to vacate or modify the decision pursuant to s. 682.13 or 682.14. The department shall adopt rules for arbitration under this subsection, which rules may not be inconsistent with the arbitration rules of the American Arbitration Association as of January 1, 1996.
On February 3, 2000, the arbitration proceedings FWUA instituted in connection with the application it had filed on April 30, 1999, eventuated in a split decision by the arbitration panel, approving, as modified, the rate increase FWUA had requested. The Department of Insurance applied to circuit court for an order vacating the arbitration award, but the circuit court declined to vacate the arbitrators' decision. On the Department's appeal of the circuit court's order, we affirmed. Dep't of Ins. v. Fla. Windstorm Underwriting Ass'n, 802 So.2d 1153 (Fla. 1st DCA 2001).
The declaratory judgment proceedings that have given rise to the present appeal were instituted separately in circuit court. A belated, collateral attack in circuit court on an insurance rate approved by the Department of Insurance in conformity with the Administrative Procedure Act would not comport with the requirement that administrative remedies be exhausted. See Spink v. McConnell, 529 So.2d 813, 814 (Fla. 1st DCA 1988); Gulf Coast Home Health Servs. of Fla., Inc. v. Dep't of HRS, 513 So.2d 704, 706 (Fla. 1st DCA 1987).[2] "Generally, where administrative remedies are available, it is improper to seek relief in the circuit court before those remedies are exhausted. Schl. Bd. of Flagler County v. Hauser, 293 So.2d 681 (Fla.1974); Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 689 So.2d 1127, 1129 (Fla. 1st DCA 1997); Dep't of Envtl. Prot. v. PZ Constr. Co., Inc., 633 So.2d 76, 78 (Fla. 3d DCA 1994)." Dep't of Agric. & Consumer Servs. v. City of Pompano Beach, 792 So.2d 539, 545 (Fla. 4th DCA 2001).
But the present case is not and does not purport to be an attack on agency action even colorably taken under the Administrative Procedure Act. The appellants are aligned with, not in opposition to, the Department of Insurance in asserting that arbitration was an improper means of deciding whether and in what amount FWUA's premiums should be raised. They share with the Department the view, which we today embrace, that the Department has never given its approval of the rate hike, and that FWUA's resort to arbitration as a means of raising rates was a "material error ... made by the insurer." § 627.062(2)(g), Fla. Stat. (2003).
The appellants contend not only that arbitration of proposed rate increases did *414 not comply with FWUA's Plan of Operation; but also that the rate increase was invalid because no public hearing was held on the proposed increase, as allegedly required by section 627.0629(7), Florida Statutes, and Rule 4-166.051, Florida Administrative Code; and that the statutes allowing arbitration of proposed rate increases were unconstitutional because they impermissibly delegated regulatory and legislative authority to private persons, violated separation of powers requirements, and deprived insureds of property without due process of law. On all three theories, appellants seek a determination that FWUA's rate increase, already finally adjudicated and implemented, must be refunded because of the manner in which the increase was decided upon. It is necessary to address the first theory only.
Under FWUA's Plan of Operation, insurance rate increases proposed by FWUA require approval by the Department of Insurance. Even after the Legislature amended the Insurance Code to provide that FWUA "may require arbitration of a rate filing under s. 627.062(6)," ch. 97-55, § 5, at 332, Laws of Fla. (codified at § 627.351(2)(b)(5)(b), Fla. Stat. (1997)),[3] the Department of Insurance, while revising FWUA's Plan of Operation in other respects, left intact provisions calling for rates "approved by the Department" and for rate increases only "upon approval of the Department." Fla. Admin.Code Ann. r. 4J-1.001 (2001). FWUA's resort to section 627.062(6), Florida Statutes (1997), after the Department of Insurance disapproved the request for rate increases FWUA filed on April 30, 1999, was not authorized, therefore, because FWUA's Plan of Operation required departmental approval or assent, not an arbitration award.
That FWUA is governed by its Plan of Operation is set out in FWUA's Articles of Agreement, which the Department of Insurance approved by an administrative rule originally promulgated in 1983. See Dep't of Ins. v. Fla. Ass'n of Ins. Agents, 813 So.2d 981, 982 (Fla. 1st DCA 2002) (FWUA "functions pursuant to a plan of operation, which must ultimately be reviewed and approved by the Department."); Fla. Admin. Code Ann. r. 4J-1.001 (2001). Section VI of the Plan requires that the Department assent to FWUA's rates: "The rates, rating plans and rating rules applicable to Windstorm Insurance written by the Association ... shall be those approved for use by the Association by the Department [of Insurance]." Section VIII of the Plan provides that "rates of the Association shall comply with ... orders of the Department." In its answer to amended complaint, the Department "admitted that the FWUA's Plan of Operation does not authorize the arbitration of its rates."
The statutory amendment permitting rate arbitration was permissive, not mandatory, and did not alter FWUA's Plan of Operation. The Plan of Operation was and is an administrative rule, and it is, of course, "`axiomatic that an administrative rule cannot ... contravene the provisions of a statute.' State, Dep't of Bus. Reg. v. Salvation Ltd., 452 So.2d 65, 66 (Fla. 1st DCA 1984); Willette v. Air Prods., 700 So.2d 397, 401 (Fla. 1st DCA 1997) (`A statute takes precedence over a rule.')." See Clemons v. State Risk Mgmt. Trust Fund, 870 So.2d 881, 884 (Fla. 1st DCA 2004) (Benton, J., concurring). But FWUA's Plan of Operation is also a controlling *415 corporate document, analogous to a private corporate charter, a private association's articles of incorporation, or a private entity's bylaws. See Word of Life Ministry, Inc. v. Miller, 778 So.2d 360, 363 (Fla. 1st DCA 2001) (holding that corporation must act in accordance with its charter and bylaws); S & T Anchorage, Inc. v. Lewis, 575 So.2d 696, 698 (Fla. 3d DCA 1991) (holding that an association could not "act in any way not authorized in its articles of incorporation or bylaws"). While, once the statute was amended, FWUA could have amended its Plan of Operation and the Department of Insurance could have amended its rule to allow FWUA to elect rate arbitration, the Plan and rule were never amended to confer such authority.
As for relief, if any, in the form of an order "that premiums charged each policyholder constituting the portion of the rate above that which was actuarially justified be returned to such policyholder in the form of a credit or refund," the Department of Insurance, not the circuit court, has responsibility for reviewing insurance rates and rate increases and determining whether "a rate or rate change is excessive, ... or unfairly discriminatory." § 627.062(2), Fla. Stat. (2003). In this connection, the Insurance Code provides:
(g) The office may at any time review a rate, rating schedule, rating manual, or rate change; the pertinent records of the insurer; and market conditions. If the office finds on a preliminary basis that a rate may be excessive, inadequate, or unfairly discriminatory, the office shall initiate proceedings to disapprove the rate and shall so notify the insurer. However, the office may not disapprove as excessive any rate for which it has given final approval or which has been deemed approved for a period of 1 year after the effective date of the filing unless the office finds that a material misrepresentation or material error was made by the insurer or was contained in the filing. Upon being so notified, the insurer or rating organization shall, within 60 days, file with the office all information which, in the belief of the insurer or organization, proves the reasonableness, adequacy, and fairness of the rate or rate change. The office shall issue a notice of intent to approve or a notice of intent to disapprove pursuant to the procedures of paragraph (a) within 90 days after receipt of the insurer's initial response. In such instances and in any administrative proceeding relating to the legality of the rate, the insurer or rating organization shall carry the burden of proof by a preponderance of the evidence to show that the rate is not excessive, inadequate, or unfairly discriminatory. After the office notifies an insurer that a rate may be excessive, inadequate, or unfairly discriminatory, unless the office withdraws the notification, the insurer shall not alter the rate except to conform with the office's notice until the earlier of 120 days after the date the notification was provided or 180 days after the date of the implementation of the rate. The office may, subject to chapter 120, disapprove without the 60-day notification any rate increase filed by an insurer within the prohibited time period or during the time that the legality of the increased rate is being contested.
(h) In the event the office finds that a rate or rate change is excessive, inadequate, or unfairly discriminatory, the office shall issue an order of disapproval specifying that a new rate or rate schedule which responds to the findings of the office be filed by the insurer. The office shall further order, for any "use and file" filing made in accordance with subparagraph (a)2., that premiums charged *416 each policyholder constituting the portion of the rate above that which was actuarially justified be returned to such policyholder in the form of a credit or refund....
Id. Where the Department has not acted, it is not for the circuit court to order the monetary relief appellants seek in conjunction with the present suit for declaratory judgment. No cause of action in circuit court exists for refunds of and credits for insurance premiums paid in conformity with rates statutorily deemed approved (even if not actually approved) by the Department of Insurance. At least in the first instance, appellants should address their requests for such relief to the Department of Insurance, which does have authority to order credits or refunds, if any are due.
Accordingly, we affirm the trial court's refusal to order refunds and denial of injunctive relief, but reverse the judgment and declaration insofar as it declares that "the arbitration resulted in Department approval as a matter of law," and vacate the judgment and declaration insofar as it construes section 627.0629(7), Florida Statutes, and Rule 4-166.051, Florida Administrative Code, and insofar as it adjudicates the constitutionality of certain provisions of the Florida Insurance Code. See, e.g., Lykes Bros., Inc. v. City of Plant City, 354 So.2d 878, 881 (Fla.1978) ("[W]e find it unnecessary to reach the constitutional question on which the trial judge ruled.").
ERVIN, J., concurs; WOLF, C.J., concurs with opinion.
WOLF, C.J., Concurring.
I cannot agree with the reasoning of the majority. Section 627.062(6)(a), Florida Statutes (1999), requires that "[t]he department and insurer must treat the decision of the arbitrators as the final approval of a rate filing." The majority determines that the statute may not be enforced as written because it conflicts with the Florida Windstorm Underwriters Association Plan of Operation. That plan was adopted by rule by the Department of Insurance. Fundamental administrative law dictates that an administrative rule may not conflict with the unambiguous dictates of a statute. See Cleveland v. Fla. Dep't of Children & Families, 868 So.2d 1227 (Fla. 1st DCA 2004) (holding that a rule that conflicts with a subsequent adopted statutory amendment may not be enforced). The majority's determination that the plan overrides the statute is erroneous.
I concur with the majority's decision, however, that the arbiter does not have final authority in the matter. I would find section 627.351(2)(b)(5)(b), and section 627.062(6), Florida Statutes, unconstitutional. Ratemaking is a legislative policy function of government. See Chiles v. Public Serv. Comm'n Nominating Council, 573 So.2d 829, 832 (1991); S. Florida Cargo Carriers v. Dep't of Bus. & Prof'l Pilotage Rate Review Bd., 738 So.2d 391 (Fla. 3d DCA 1999) rev. denied 766 So.2d 223 (Fla.2000). Such functions cannot be delegated to private parties pursuant to Article III, Section 1, and Article II, Section 3 of the Florida Constitution which contemplate that the legislative power of the state will be exercised by the legislature or be properly delegated with sufficient guidelines to an appropriate governmental agency. The statutory sections which permit private arbiters to set FWUA's rates constitute an illegal delegation of the sovereign legislative power of the state.
NOTES
[1] FWUA's Plan of Operation required departmental approval, not an arbitration award. By requiring that the arbitration decision be "treated as" the final approval of a rate filing, section 627.062(6)(a) distinguished between departmental approval and an arbitration decision, and necessarily recognized them as two different things.
[2] That the court below even had jurisdiction is not wholly free from doubt, although no party to the appeal raises the question. A declaratory judgment action may be maintained only where there is an actual, bona fide, controversy not already adjudicated. See Yell v. Healthmark of Walton, Inc., 772 So.2d 568, 570 (Fla. 1st DCA 2000).
[3] Subsequent amendments to the Insurance Code render the prospective injunctive relief appellants seek unnecessary. See ch.2002-240, § 2, at 1782, Laws of Fla. (deleting authorization for arbitration).