Cameron **FRAZIER**, through his mother and next friend, Christine Frazier, Plaintiff,

v.

Cynthia **ALEXANDRE**, et al., Defendants.

No. 05–81142–CIV.

United States District Court, S.D. Florida.

May 31, 2006.

---

**1352**

James Kellogg Green, West Palm Beach, FL, Randall C. Marshall, American Civil Liberties Union, Miami, FL, for Plaintiff.

Michael Roland Holt, Rumberger Kirk & Caldwell, Miami, FL, James Richard Caldwell, Jr., Rumberger Kirk & Caldwell, Tampa, FL, Daniel Jon Woodring, Department of Education, Tallahassee, FL, for Defendants.

## ORDER DENYING STATE DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

RYSKAMP, District Judge.

THIS CAUSE comes before the Court pursuant to Defendants John Winn, F. Philip Handy, Donna Callaway, T. Willard Fair, Roberto Martinez, Phoebe Raulerson, Linda Taylor and Kathleen Shanahan's (collectively, "State Defendants") February 9, 2006 [**DE 31**] Motion to Dismiss Counts Four and Five of the Amended Complaint.[1] Plaintiff Cameron Frazier ("Frazier") responded on February 21, 2006 [**DE 35**]. The State Defendants replied on March 6, 2006 [**DE 37**].

This cause is also before the Court pursuant to Frazier's Motion for Judgment on the Pleadings against Defendants Cynthia Alexandre ("Alexandre"), Richard Poorman ("Poorman") and the Palm Beach County School District ("District") (collectively, "School Defendants"), filed February 21, 2006 [**DE 34**] pursuant to the February 6, 2006 [**DE 30**] Consent Order between Frazier and these Defendants. The State Defendants responded on March 13, 2006 [**DE 40**]. Frazier replied on March 22, 2006 [**DE 41**]. Alexandre, also sued in her individual capacity, adopts the State Defendants' arguments in favor of dismissal as her own.

## I. BACKGROUND

At the time of the filing of this action, Frazier was an eleventh grade student at Boynton Beach Community High School, Palm Beach County School District, Florida. (Am.Compl.¶ 1.) Because of his personal political beliefs and convictions, he does not want to recite, or stand during, the pledge of allegiance each morning. (Am.Compl.¶ 1.) The District Board, following Fla. Stat. § 1003.44(1)[2], has a policy mandating that students, unless

---

1. John Winn is the Commissioner of the Florida Department of Education. The remaining State Defendants are members of the Florida State Board of Education.

2. The Florida pledge statute provides as follows:

 Each district school board may adopt rules to require, in all of the schools of the dis-

excused by written request of a parent, recite the pledge of allegiance.[3] (Am. Compl. ¶ 1; Student and Family Handbook, p. 16.)[4] The policy further requires that students, even if excused from reciting the pledge, must stand at attention while the pledge is recited. (Am.Compl.¶ 1.) Frazier alleges that this policy, the statute upon which it is based, as well as the actions of the individual defendants, are in violation of the First and Fourteenth Amendments to the United States Constitution. (Am. Compl.¶ 1.) He brings this 42 U.S.C. § 1983 action through his mother and next friend, Christine Frazier. (Am. Compl.¶ 3, 5.)

On December 8, 2005, Frazier was in Alexandre's fourth period math class, when the pledge of allegiance was to be recited. (Am.Compl.¶ 11.) The students ordinarily recited the pledge earlier in the

---

trict, programs of a patriotic nature to encourage greater respect for the government of the United States and its national anthem and flag, subject always to other existing pertinent laws of the United States or of the state. When the national anthem is played, students and all civilians should stand at attention, men removing the headdress, except for when such headdress is worn for religious purposes. The pledge of allegiance to the flag, "I pledge allegiance to the flag of the United States of America and to the republic for which it stands, one nation under God, indivisible, with liberty and justice for all," shall be rendered by students standing with the right hand over the heart. The pledge of allegiance to the flag shall be recited at the beginning of the day in each public elementary, middle, and high school in the state. Each student shall be informed by posting a notice in a conspicuous place that the student has the right not to participate in reciting the pledge. Upon written request by his or her parent, the student must be excused from reciting the pledge. When the pledge is given, civilians must show full respect to the flag by standing at attention, men removing the headdress, except when such headdress is worn for religious purposes, as provided by Pub.L. ch. 77–435, s. 7, approved June 22, 1942, 56 Stat. 377, as amended by Pub.L. ch. 77–806, 56 Stat. 1074, approved December 22, 1942.

Fla. Stat. § 1003.44(1). The school district policy based thereon provides as follows:

The Pledge of Allegiance

Florida Statutes Section 1003.44 requires the Pledge of allegiance to be recited at the beginning of the day in every public elementary, middle, and high school in the state. Each student has the right not to participate in reciting the pledge. When a parent requests in writing, the student must be excused from reciting the pledge. Any student who is excused from reciting the pledge must still show full respect for the flag by standing at attention while the pledge is recited; men must remove any headdress, except when it is worn for religious purposes.

(Am.Compl.Ex. 1.)

3. The school district policy based thereon provides as follows:

The Pledge of Allegiance

Florida Statutes Section 1003.44 requires the Pledge of allegiance to be recited at the beginning of the day in every public elementary, middle and high school in the state. Each student has the right not to participate in reciting the pledge. When a parent requests in writing, the student must be excused from reciting the pledge. Any student who is excused from reciting the pledge must still show full respect for the flag by standing at attention while the pledge is recited; men must remove any headdress, except when it is worn for religious purposes.

(Am.Compl.Ex. 1.) The District's Student and Family Handbook provides as follows:

**Students have a right** to be excused from reciting the Pledge of Allegiance upon written request by a parent or guardian (F.S. 1003.44(1)).

4. Because Frazier's motion for judgment on the pleadings attaches for the first time an excerpt from the District's Student and Family Handbook, the Court will treat the motion as one for summary judgment pursuant to Rule 56.

day; December 8 marked the first time the recitation occurred when Frazier was in Alexandre's class. (Am.Compl.¶ 11.) When Frazier did not stand for the recitation, Alexandre ordered him to stand. Frazier refused. (Am.Compl.¶ 12.) Alexandre again ordered Frazier to stand. Frazier again refused, explaining that he had not stood for the pledge since the sixth grade and that he was not going to change his practice. (Am.Compl.¶ 13.)

Alexandre responded, saying "oh you wanna bet? See your desk? Now look at mine. Big desk, little desk. You obviously don't know your place in this classroom." (Am.Compl.¶ 14.) Frazier responded: "I thought this was a classroom. Why must you insist on taking this so far?" Alexandre then said: "I will take this as far as I need to. I will fight this to the top." (Am.Compl.¶ 15.) Frazier responded: "I'm sorry, I do not stand for the flag." (Am.Compl.¶ 16.) Alexandre, becoming angry, was looking through her filing cabinet and said: "I'm sorry, did you say you don't stand for the f—— flag!" Frazier responded "no, I said the flag." Other class members then said "Yes, Mrs. Alexandre, he said flag." (Am. Compl.¶ 17.) Alexandre then handed Frazier a document with the Palm Beach County School District's logo on it and told Frazier: "Read this. Florida state statutes say you may choose not to say the pledge ONLY by written request by your parent AND you still must stand!" (Am. Compl. ¶ 18; Am. Compl. Ex. 1.) Frazier replied that he had heard that before but was told that he did not need to have a parent excuse him from reciting the pledge of allegiance. He reiterated that he did not stand for the pledge of allegiance. (Am.Compl.¶ 19.) Alexandre then said: "You clearly have no respect! You are so ungrateful and so un-American. Do you know what's out there fighting our war? That flag you refuse to show respect to." (Am.Compl.¶ 20.) Frazier replied "no, our soldiers are out fighting a war. The flag is an inanimate piece of cloth that doesn't move and surely can't hold a gun." Alexandre said "You are so ridiculous! I can't believe you are so disrespectful!" (Am. Compl.¶ 21.) Frazier tried to respond, saying "I choose not to say the . . ." but was interrupted by Alexandre who said "No! You're out of here. I'm so sick of you!" She called the principal's office and requested that Frazier be removed from the class. She then crossed her arms and stared at Frazier. (Am.Compl.¶ 22.)

Shortly thereafter, Poorman, the assistant principal, Salvatore Camp ("Camp"), another administrator, and a school police officer came to the classroom. (Am. Compl.¶ 23.) Alexandre told them that "I have an extremely disrespectful student who refuses to stand for the pledge." Camp asked who it was and Frazier raised his hand. (Am.Compl.¶ 23.) Camp directed Frazier to get his things, which he did and left the classroom. (Am.Compl.¶ 24.) In the meantime, Alexandre gave Poorman a copy of the school district's policy. (Compl.¶ 24.) Poorman told Frazier to go to the office. (Compl.¶ 25.)

Frazier waited for Poorman in the principal's office for about half an hour. Poorman came in and handed Frazier the school policy, with a signature line for his mother's signature, and instructed him to have her sign it. (Am.Compl.¶ 26.) Poorman told Frazier that he had talked to his mother but that he would still have to stand during the pledge of allegiance. (Am.Compl.¶ 26.) Frazier was then made to sit in the office until the class period was over and was not allowed to return to the classroom that day. (Am.Compl.¶ 27.)

He was humiliated by the actions of the individual defendants. (Am.Compl.¶ 27.)

Although he has not been punished again since the incident on December 8, Frazier remains subject to District policy, and state law, that could result in additional punishment at any time a teacher or administrator decides to enforce those policies. (Am.Compl.¶ 30.) Frazier believes he has been, and will continue to be irreparably harmed by his continued punishment and denial of his constitutional right. Frazier claims that unless restrained by this Court, he will continue to be subjected to verbal abuse or other punishment for the exercise of his First Amendment right of expression by remaining seated during the pledge of allegiance and not reciting the pledge. (Am.Compl.¶ 31.)

Frazier sues both Alexandre and Poorman in their individual capacities for damages and injunctive relief. (Am.Compl.¶ 2.) Frazier also sues Poorman in his official capacity. (Am.Compl.¶ 7.) Plaintiff seeks declaratory and injunctive relief against the District for its alleged unconstitutional policies. (Am.Compl.¶ 2.) The District is a public entity created by Fla. Stat. § 1001.30 and is governed by the Palm Beach County School District Board, which is subject to suit pursuant to Fla. Stat. § 1001.41(4). (Am.Compl.¶ 8.)

Frazier seeks declaratory and injunctive relief against the State Defendants in their official capacities. (Am.Compl.¶ 2.) Pursuant to Fla. Stat. § 1001.10, the Commissioner of Education is the chief educational officer of the State of Florida and is responsible for giving full assistance to the State Board of Education in enforcing compliance with state polices regarding education. (Am.Compl.¶ 9.) One of the duties of the State Board of Education is "to enforce systemwide education goals and policies." Fla. Stat. § 1001.02(2)(r). The State Board of Education is specifically charged with enforcing compliance with law by all school districts in the State of Florida. Fla. Stat. § 1001.03(8). (Am. Compl.¶ 10.)

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). (Am. Compl.4.) Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202, and injunctive relief pursuant to Fed.R.Civ.P. 65. (Am.Compl.¶ 5.)

Counts I and II, brought against Alexandre and Poorman, allege that their actions deprived Frazier of his right to refuse to recite the pledge of allegiance, and to remain seated during the pledge of allegiance, in violation of the First and Fourteenth Amendments to the United States Constitution. Frazier seeks injunctive relief and compensatory damages against both and punitive damages against Alexandre. (Am.Compl.¶ 35–36.) Count III, brought against the District, alleges that the District's customs and policies directly caused the violation of Frazier's right to refuse to recite the pledge of allegiance, and to remain seated during the pledge of allegiance, in violation of the First and Fourteenth Amendments to the United States Constitution. (Am.Compl.¶ 37.)

Count IV, brought against the State Defendants, alleges that Fla. Stat. § 1003.44(1), to the extent it requires a student to obtain a parent's permission before being excused from reciting the pledge of allegiance and requires a student to stand during the pledge of allegiance, violates plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution. (Am.Compl.¶ 38.)

Count V, brought against all Defendants, alleges that the Supremacy Clause

of the U.S. Constitution, Art. VI, Clause 2, provides that the federal Constitution is "the supreme Law of the Land" notwithstanding any state or local law to the contrary. (Am.Compl.¶ 39.) Frazier alleges that Fla. Stat. § 1003.44(1), and District policies, directly contravene the Constitution as set out above and are therefore pre-empted by the Constitution to the extent of the contradiction. (Am. Compl.¶ 40.)

Frazier requests a declaratory judgment that Fla. Stat. § 1003.44(1) and the District policy, to the extent they require a student to obtain a parent's permission before being excused from reciting the pledge of allegiance and require a student to stand during the pledge of allegiance, are unconstitutional on their face and as applied to him. Frazier also requests a preliminary and permanent injunction enjoining the School Defendants from disciplining or otherwise subjecting him to adverse action for his refusal to recite the pledge of allegiance and for his remaining seated during the pledge of allegiance. Frazier requests compensatory damages from the School Defendants and punitive damages from Alexandre. As to the State Defendants, Frazier requests a declaration that his rights were violated, preliminary and permanent injunctions enjoining the enforcement of the statute to the extent it requires a student to obtain a parent's permission before being excused from reciting the pledge of allegiance and requires a student to stand during the pledge of allegiance, as well as a permanent injunction enjoining the State Defendants from taking affirmative steps to ensure that Florida school districts comply with the United States Constitution by not enforcing Fla. Stat. § 1003.44(1), or any school district policies based upon that statute, to the extent they require a student to obtain

a parent's permission before being excused from reciting the pledge of allegiance and require a student to stand during the pledge of allegiance. Frazier requests the costs and expenses of this action together with reasonable attorneys' fees, judicial retention of jurisdiction, as well as such other and further relief as the Court may deem just and proper.

On February 6, 2006 [**DE 30**], the Court entered a Consent Order upon consent of Frazier and the School Defendants. For purposes of this lawsuit only and for purposes of deciding the constitutionality of the statute, the School Defendants stipulate to the facts plead in the First Amended Complaint and agree that the case may be resolved by a motion for judgment on the pleadings pursuant to Rule 12(c), (here, treated as a Rule 56 motion for summary judgment) without the need for an answer to be filed. The District stipulated that, for purposes of this lawsuit only, it, normally following Fla. Stat. § 1003.44(1), has a custom or practice mandating that students, unless excused by written request of a parent, recite the pledge of allegiance. The custom or practice further requires that students, even if excused from reciting the pledge, must stand at attention while the pledge is recited. The District agrees, for purposes of this lawsuit only, that such customs or practices are sufficient to subject it to liability under *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978), if Frazier is correct in his constitutional claims. Otherwise stated, these parties believe that the constitutionality of Fla. Stat. § 1003.44(1) is dispositive of Frazier's claims: if the statute is unconstitutional, the District's customs and practices based thereon are unconstitutional as well.

The State Defendants have moved to dismiss Counts IV and V pursuant to Rule

12(b)(6) as well as all claims for non-prospective relief. Frazier has moved for judgment on the pleadings, which the Court will treat as a motion for summary judgment. The Court will address these motions in tandem.

## II. *LEGAL STANDARD*

### A. Motion to Dismiss

A complaint must be dismissed for failure to state a claim if no set of facts could be proven that would support a claim for relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). *See also Bracewell v. Nicholson Air Servs.,* 680 F.2d 103, 104 (11th Cir.1982). The court should accept all well-pleaded allegations as true and view the motion in the light most favorable to the non-moving party. *See Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232. However, a plaintiff must do more than merely label his or her claims. *See Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996). Dismissal of a complaint or a portion thereof is appropriate when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

### B. Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). An issue is "material" if it is a legal element of the claim under applicable substantive law that may affect the resolution of the action. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *See id.,* 106 S.Ct. at 2510. The movant may meet this standard by presenting evidence demonstrating the absence of a dispute of material fact or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. The moving party need not supply "affidavits or other similar materials negating the opponent's claim." *Id.,* 106 S.Ct. at 2552–53.

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). Although the nonmovant need not present evidence that would be admissible at trial, it may not rest on his pleadings. *Id.,* 106 S.Ct. at 2553. "[T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

**1358**

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. *See also Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1281–82 (11th Cir.1999).

## III. *DISCUSSION*

### A. Standing

The State Defendants dispute that Frazier has standing to bring either facial or as applied challenges to the statute. As to the facial challenge, the State Defendants argue that Frazier improperly attempts to assert the rights of third parties. As to the as applied challenge, the State Defendants argue that the statute was never applied against Frazier because he did not have a parent's permission to be excused from reciting the pledge. The State Defendants also contend that Frazier's failure to seek parental permission renders his challenge moot.

■ The State Defendants argue that because Frazier's parent never sought to excuse him from participating in the pledge, he "lacks standing to raise a claim against the school's 'students must stand' policy or any related facial claim," citing *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), and *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556(1984), for the proposition that Frazier cannot assert third party rights as his basis for seeking relief. This argument is untenable for several reasons.

■ First, this argument assumes the constitutionality of the parental consent provision. As the analysis herein indicates, Frazier asserts First Amendment

rights personal to him for which he does not need parental consent. Failure to obtain parental permission therefore does not render Frazier's challenge moot. Second, even if Frazier were resting his claim on the interests of third parties, he would still have standing, as application of this regulation affects all underage students in the District who may want to say the pledge but whose parents have requested they be excused from same. *Warth* and *Allen* do stand for the proposition that litigants are normally prohibited from asserting the "legal rights or interests of third parties," *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205, but both cases were 14th Amendment equal protection cases. In the First Amendment context, however, the Supreme Court has relaxed the limitation on asserting the legal rights of third parties. *See Secretary of State v. Joseph H. Munson Co.,* 467 U.S. 947, 956–58, 104 S.Ct. 2839, 2846–48, 81 L.Ed.2d 786 (1984) ("Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.") (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 612–13, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973)). First Amendment plaintiffs may assert the rights of third parties so long as they can demonstrate that they personally suffered some cognizable injury. *See Joseph H. Munson Co.,* 467 U.S. at 958, 104 S.Ct. at 2847–48. The plaintiff is allowed to lodge a facial attack not because his "own rights of free expression [have been] violated," but because of the "assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."

*Broadrick,* 413 U.S. at 612, 93 S.Ct. at 2916. *See also Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 738, 13 L.Ed.2d 649 (1965) (allowing challenges to licensing statutes delegating unbridled discretion to licensing authority, recognizing the " 'danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.' ") (quoting *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963); *Lovell v. Griffin,* 303 U.S. 444, 452–53, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938)) (unnecessary to seek permit to challenge ordinance requiring permit to distribute printed literature because ordinance infringed freedom of the press and was therefore facially invalid).

Here, Frazier suffered injury in fact: he was removed from the classroom, subjected to verbal castigation by Alexandre, and was personally subjected to the statute's requirement that even if he did not recite the pledge, he would have to remain standing. (Am.Compl.¶ 18, 26.) *See Holloman v. Harland,* 370 F.3d 1252, 1268–69 (11th Cir.2004) (verbal censure and singling student out constitutes punishment). These injuries in fact resulted from practices and customs based upon Fla. Stat. § 1003.44(1). Frazier's injury will be redressed by a favorable decision by this Court. Frazier has thus satisfied the requirements of Article III standing and may bring a facial challenge to all parts of the statute. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (injury in fact, causation and redressability necessary for Article III standing).

■ The State Defendants maintain that the as applied challenge is lacking because Frazier did not secure parental permission to be excused. The State Defendants also maintain that an as applied challenge is deficient because the statute allows non-participating students (who have secured parental permission) to remain seated during the pledge.

According to the State Defendants, a student not reciting the pledge need not stand or place a hand over his or her heart, as the statute addresses a student "standing" only with respect to those students who actually recite the Pledge: "The pledge of allegiance ... shall be rendered by students standing with the right hand over the heart." The term "reciting the pledge," according to the State Defendants, indicates that students are excused from performing all three indicia of Pledge participation: orally rendering, standing, and putting a right hand over their heart. Although the statute provides that "[w]hen the pledge is given, *civilians* must show full respect ... by *standing* at attention," the State Defendants assert that this sentence does not apply to students because the subsection specifically distinguishes "students" from non-student "civilians," as it earlier referred to them separately with the regard to the national anthem: "When the national anthem is played, *students and all civilians* shall stand at attention." (emphasis added). The State Defendants note that a "civilian," is "one who is not an active member of the military or police," indicating that the statute separates two groups of individuals that have different rights and responsibilities in the school context: "students" and non-student "civilians." The American Heritage Dictionary of the English Language, 4thed., at 340 (2000). In essence, the State Defendants argue that because the specific word "student" is referenced in the first part of the challenged statute and is followed by the broader term "civilian," that "civilian" ex-

cludes "students." By explicitly demarcating Pledge participation requirements for students and civilians, the statute conveys that the last sentence does not apply to students, that is, non-participating students are not required to stand for the pledge.

Frazier argues that the statute requires non-participating students to stand. He notes that the statute is found in Chapter 1003 of Florida's Education Code, which covers "Public K–12 Education." The specific section itself is located in Part IV— "Public K–12 Educational Instruction;" the title of § 1003.44 is "Patriotic programs; rules," and the section authorizes "district school board[s][to] adopt rules to require" patriotic programs and requires the pledge to be recited in Florida's public schools each morning. Frazier finds it absurd to suggest that this provision—specifically addressing patriotic programs in Florida's public elementary, middle and high schools—is a general requirement that every non-military person within the State of Florida, upon hearing the pledge of allegiance, is required to "show full respect to the flag by standing at attention." If the statute only applies to schools, "civilians" would include instructional staff, administrators, support personnel, cafeteria workers, custodial staff, or school visitors. Were such the case, the State of Florida would be commanding those individuals, but not its students, to stand at attention for the pledge recitation. Students would then possess greater rights than these other individuals. Not only does that interpretation bring about an absurd result, it also runs afoul of the *ejusdem generis* cannon of construction, which provides that "where the enumeration of specific things ["student"] is followed by a more general word or phrase ["civilian"], the general phrase is construed to refer to a thing of the same nature as the preceding specific things." *Florida Dep't of Revenue v. James B. Pirtle Constr. Co.*, 690 So.2d 709, 711 (Fla. 4th DCA 1997) (citing *Hanna v. Sunrise Recreation, Inc.*, 94 So.2d 597, 599–600 (Fla.1957)).

The inclusion of "civilian" in the statute reflects the language of the original federal statute. In 1942, Congress adopted, and the President signed, a Joint Resolution codifying a detailed set of "rules and customs pertaining to the display and use of the flag of the United States of America." Chapter 435, 56 Stat. 377. Section 7 of this codification provided in full:

> That the pledge of allegiance to the flag, 'I pledge allegiance to the flag of the United States of America and to the Republic for which it stands, one Nation indivisible, with liberty and justice for all', be rendered by standing with the right hand over the heart; extending the right hand, palm upward, toward the flag at the words 'to the flag' and holding this position until the end, when the hand drops to the side. However, civilians will always show full respect to the flag when the pledge is given by merely standing at attention, men removing the headdress. Persons in uniform shall render the military salute.

*Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 6–7, 124 S.Ct. 2301, 2305–06, 159 L.Ed.2d 98 (2004) (citations omitted). Section 7 of House Joint Resolution 359, approved December 22, 1942, 56 Stat. 1074, 36 U.S.C. (1942 Supp.) s 172, 36 U.S.C.A. s 172, set no penalty for nonconformity but provides:

> That the pledge of allegiance to the flag, 'I pledge allegiance to the flag of the United States of America and to the Republic for which it stands, one Nation indivisible, with liberty and justice for

all', is rendered by standing with the right hand over the heart. However, civilians will always show full respect to the flag when the pledge is given by merely standing at attention, men removing the headdress. [Persons in uniform shall render the military salute.]

*West Virginia Board of Education v. Barnette,* 319 U.S. 624, 638 n. 17, 63 S.Ct. 1178, 1185 n. 17, 87 L.Ed. 1628 (1943). The text accompanying this footnote explains that this provision made "flag observance voluntary." *Id.* at 638, 63 S.Ct. at 1185. Hence, civilians not reciting the pledge were expected to show respect for the flag by standing. The original Florida statute did not mention students in the pledge of allegiance section and employed the exact language of the incorporated U.S. Public Laws:

> The Board of Public Instruction of any county is hereby authorized to adopt rules and regulations pertaining to and requiring to be used in all of the schools of the county any program of a patriotic nature to encourage greater respect for the government of the United States, its national anthem and flag ...
>
> PROVIDED, that when the national anthem is played, students and all civilians shall always stand at attention, men removing the headdress. PROVIDED FURTHER, that the pledge of allegiance to the flag, "I pledge allegiance to the flag of the United States of America and to the Republic for which it stands, one Nation indivisible, with liberty and justice for all", be rendered by standing with the right hand over the heart. However, civilians will always show full respect to the flag when the pledge is given by merely standing at attention, men removing the headdress, as provided by Section 7 of United States Public

Law No. 623, approved June 22, 1942, as amended by United States Public Law No. 829, approved December 22, 1942.

Laws of Florida—1943—Chap. 22015 (emphasis added).

The federal standards incorporated into the current state statute divided the population into two components: civilians and military personnel and prescribed the proper way for both groups to show respect for the flag. The inclusion of the term "civilian" is hardly a choice by the Florida legislature to distinguish between "students" and "non-student civilians" as suggested by the State Defendants. A plain reading of the statute confirms that the Palm Beach County School Board's customs and practices are indeed based upon a correct interpretation of Fla. Stat. § 1003.44(1).

 Nor is the State Defendants' reading of the statute entitled to deference. Ordinarily, "[a]n agency's interpretation of the statute it is charged with enforcing is entitled to great deference." *Verizon Florida v. Jacobs,* 810 So.2d 906, 908 (Fla.2002) (citing *BellSouth Telecommunications, Inc. v. Johnson,* 708 So.2d 594, 596 (Fla.1998)). This rule applies only in the face of statutory ambiguity, however. "There is no need to resort to other rules of statutory construction when the language of the statute is unambiguous and conveys a clear and ordinary meaning." *Id.* (citing *Starr Tyme, Inc. v. Cohen,* 659 So.2d 1064, 1067 (Fla.1995)). "If the intent of [the legislature] is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of [the legislature]." *State v. Sun Gardens Citrus, LLP,* 780 So.2d 922, 925 (Fla. 2d DCA 2001) (quoting *Chevron U.S.A., Inc. v.*

*Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)). As noted, in a statute aimed at patriotic programs in Florida's classrooms, the clear and ordinary meaning of "civilians" necessarily includes "students."[5] The statute does require non-pledging students to stand for the recitation. Frazier's as applied challenge may address this portion of the statute. The Court previously noted that Frazier's failure to secure parental consent does not nullify his standing to assert rights personal to him.

Finally, the State Defendants argue that they cannot be subject to an as applied challenge because the Amended Complaint does not allege that they are responsible for enforcing the pledge statute. The Amended Complaint expressly alleges that the State Defendants are charged with such authority, however. As noted, one of the duties of the State Board of Education is "to enforce systemwide education goals

and policies." Fla. Stat. § 1001.02(2)(r). Furthermore, the State Board of Education is specifically charged with enforcing compliance with law by all school districts in the State of Florida. Fla. Stat. § 1001.03(8). (Am.Compl.¶ 10.) Frazier may bring facial and as applied challenges as to all parts of the pledge statute.

## B. Free Speech Analysis

The State Defendants argue that a child may not independently assume, veto or otherwise block the right of a parent or guardian to direct the education of his or her child, maintaining that none of the pledge cases establish the "constitutionally novel principle" that a child may make his or her own decision whether to say the pledge.

The First Amendment protects both affirmative and negative free speech rights. *See* U.S. CONST. Amend. I. *See also Hurley v. Irish–American Gay, Lesbian*

---

**5.** Deference is also inappropriate where there is no agency adjudication at issue. Under Florida's Administrative Procedure Act, an agency adjudication is effected only by a rule, Fla. Stat. § 120.52(15), or an order, § 120.52(7). The State Defendants cite no agency decision or rule construing § 1003.44(1). An interpretation expressed in by an agency lawyer in a court paper is not entitled to deference. *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)(legal opinions by lawyers that lack the force of law are not entitled to deference); *FLRA v. United States Dep't of Treasury,* 884 F.2d 1446, 1455 (D.C.Cir. 1989)("[A] position established only in litigation may have been developed hastily, or under special pressure, or without an adequate opportunity for presentation of conflicting views.").

Deference is also unwarranted when the law does not charge the agency with interpreting the statute at issue. *See United Faculty of Florida v. Public Employees Relations Comm'n,* 898 So.2d 96, 101 (Fla. 1st DCA 2005). While the State Defendants have over-

all authority for enforcement of school district compliance with state education law and state board rules, the district school boards are "primarily responsible for compliance with law and state board rule." Fla. Stat. § 1008.32. The statute specifically delegates to "[e]ach district school board" the power to implement the statute by "adopt[ing] rules to require, in all of the schools of the district, programs of a patriotic nature . . . ." No similar delegation of Legislative rule-making power exists for the State Board of Education.

Finally, a Florida court "need not defer to an agency's construction or application of a statute if special agency expertise is not required." *Florida Hosp. v. Agency for Health Care Admin.,* 823 So.2d 844, 848 (Fla. 1st DCA 2002) (citing *Doyle v. Dep't of Bus. Reg.,* 794 So.2d 686, 690 (Fla. 1st DCA 2001)). The State Defendants do not argue that special expertise is required to construe the statute. For these reasons, the State Defendants' interpretation is entitled to no deference by this Court.

*and Bisexual Group of Boston,* 515 U.S. 557, 573, 115 S.Ct. 2338, 2347, 132 L.Ed.2d 487 (1995) ("[O]ne who chooses to speak may also decide what not to say.") (quotation omitted); *Riley v. National Fed'n for the Blind, Inc.,* 487 U.S. 781, 796–97, 108 S.Ct. 2667, 2677, 101 L.Ed.2d 669 (1988) ("[F]reedom of speech... necessarily compris[es] the decision of both what to say and what not to say.") (quotation omitted); *Wooley v. Maynard,* 430 U.S. 705, 714, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977) ("[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all.... [These rights] are complementary components of the broader concept of 'individual freedom of mind.'" (citation omitted)); *Barnette,* 319 U.S. at 645, 63 S.Ct. at 1189–90 (Murphy, J., concurring) ("[T]he right of freedom of thought and of religion as guaranteed by the Constitution against State action includes both the right to speak freely and the right to refrain from speaking at all....").

■ While student First Amendment rights are not "automatically coextensive with the rights of adults in other settings," it is a longstanding rule of constitutional law that a student may remain quietly seated during the pledge on grounds of personal or political belief. *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 682, 106 S.Ct. 3159, 3164, 92 L.Ed.2d 549 (1986). As the Supreme Court has stated "[i]t can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969) (upholding the First Amendment right of students to silently protest by wearing black armbands). Schools may still punish behavior that is disruptive to the school's educational goals, however. See *Hazelwood School Dist. v. Kuhlmeier,* 484 U.S. 260, 268, 108 S.Ct. 562, 568, 98 L.Ed.2d 592 (1988) (principal may delete from school newspaper material that is "inconsistent" with the school's "educational mission"); *Bethel,* 478 U.S. at 682, 106 S.Ct. at 3164 (appropriate to discipline student who delivered sexually explicit, but not obscene, speech at a school assembly).

■ Frazier does not challenge the daily recital of the pledge in Florida's classrooms. Nor does he challenge the content of the pledge. He challenges only the authority of the state to override *his* conscience and compel *his* participation in such an exercise. *Barnette* first recognized a student's right to refrain from pledge participation. *Barnette* involved a West Virginia State Board of Education resolution that provided for "regular" flag salutes and deemed refusal to participate an "act of insubordination" punishable by expulsion of the student and criminal prosecution of student's parent(s) or guardian(s). 319 U.S. at 626, 629, 63 S.Ct. at 1179, 1181. The resolution was enacted pursuant to a West Virginia statute passed for the purpose of "teaching, fostering and perpetuating the ideals, principles and spirit of Americanism ...." *Id.* at 640–42, 63 S.Ct. at 1186–87 (footnote and citations omitted). The requirement prompted objections by the Parent and Teachers Association, the Boy and Girl Scouts, the Red Cross, and the Federation of Women's Clubs that the salute was "too much like Hitler's" salute. While some modification was apparently made to those concerns, "no concession was made to Jehovah's Wit-

nesses," who deemed uttering the pledge and performing the salute violations of their faith's prohibition against bowing to graven images. *See id.* at 628–29, 63 S.Ct. at 1180–81. The Supreme Court held that the objectors could not be compelled to participate in pledge exercises in the interest of preserving their "right of self-determination in matters that touch individual opinion and personal attitude." *Id.* at 631, 63 S.Ct. at 1182. As the Court wrote:

> The freedom asserted by these appellees does not bring them into collision with rights asserted by any other individual. It is such conflicts which most frequently require intervention of the State to determine where the rights of one end and those of another begin. But the refusal of these persons to participate in the ceremony does not interfere with or deny rights of others to do so. Nor is there any question in this case that their behavior is peaceable and orderly. The sole conflict is between authority and rights of the individual. The State asserts power to condition access to public education on making a prescribed sign and profession and at the same time to coerce attendance by punishing both parent and child. The latter stand on a right of self-determination in matters that touch individual opinion and personal attitude.

*Id.* at 630–31, 63 S.Ct. at 1181–82. *Barnette* did not ask whether the "State may require teaching by instruction and study of all in our history and in the structure and organization of our government, including the guaranties of civil liberty which tend to inspire patriotism and love of country." *Id.* at 631, 63 S.Ct. at 1182 (quotation omitted). Rather, the question was whether the State may compel "students to *declare a belief.*" They are not merely made acquainted with the flag salute so that they may be informed as to what it is or even what it means. The issue here is "whether this slow and easily neglected route to aroused loyalties constitutionally may be shortcut by substituting a compulsory salute and slogan." *Id.,* 63 S.Ct. at 1182. The Court conclusively ruled that free speech was the underlying issue in mandated pledge recitation:

> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us.

*Id.* at 642, 63 S.Ct. at 1187.

The Eleventh Circuit has twice upheld the basic right of students to remain silent and seated during the pledge of allegiance. In *Banks v. Bd. of Public Instr.,* 314 F.Supp. 285, 296 (S.D.Fla.1970), *vacated by* 401 U.S. 988, 91 S.Ct. 1223, 28 L.Ed.2d 526 (1971), *reinstated without published opinion by dist. ct. and aff'd,* 450 F.2d 1103 (5th Cir.1971), the original three judge court held that Dade County school rule 6122, which required students to stand during the pledge of allegiance, was unconstitutional: "The right to differ and express one's opinions, to fully vent his First Amendment rights, even to the extent of exhibiting disrespect for our flag and country by refusing to stand and participate in the pledge of allegiance, cannot be suppressed by the imposition of suspensions." Less than two years ago, the Eleventh Circuit held the law to be clearly established in this area so as to deny individual school personnel a claim of qualified immunity and subject them to personal liability

for punishing students for not reciting the pledge, remaining seated during the pledge, or even silently protesting during the pledge of allegiance. *Holloman*, 370 F.3d at 1278–78 (right to remain seated and silent during the pledge of allegiance, as well as right to silently raise fist during the pledge, is clearly established).

The Third Circuit recently stressed the importance of protecting student First Amendment rights in *Circle School v. Phillips*, 270 F.Supp.2d 616 (E.D.Pa.), *aff'd*, 381 F.3d 172, 181–82 (3d Cir.2004), in which it struck a state statute that required parental notification when a student refused to recite the pledge of allegiance or to salute the flag. *Circle School* reasoned that the parental notice provision would unduly "chill" students' exercise of their First Amendment right to refrain from pledge recitation, rejecting the proffered justification that the notification procedure was merely an administrative action designed to appraise parents of their children's activities during the school day. *Id.* This Court disagrees with *Circle School's* holding that such reports to parents would chill First Amendment freedoms; a school notifying a parent of a child's activities during the school day is unremarkable. While the Court disagrees as to the constitutionality of the statute in *Circle School*, the statute at issue here is far more restrictive. *Circle School* students were still allowed to make their own decision whether to recite the pledge, whereas the statute here is more restrictive in that it robs the student of the right to make an independent decision whether to say the pledge. Since *Barnette*, federal courts have established a body of caselaw that irrefutably recognizes the right of students to remain silent and seated during the pledge. *See Walker–Serrano ex rel. Walker v. Leonard*, 325 F.3d 412, 417 (3d Cir.2003) ("For over fifty years, the law has protected elementary students' rights to refrain from reciting the pledge of allegiance to our flag. Punishing a child for non-disruptively expressing her opposition to recitation of the pledge would seem to be as offensive to the First Amendment as requiring its oration.") (citation omitted); *Rabideau v. Beekmantown Central School District*, 89 F.Supp.2d 263, 267 (N.D.N.Y. 2000) ("It is well established that a school may not require its students to stand for or recite the Pledge of Allegiance or punish any student for his/her failure to do so."); *Lipp v. Morris*, 579 F.2d 834, 836 (3d Cir.1978) (declaring a New Jersey statute requiring students "to show full respect to the flag while the pledge is being given merely by standing at attention" unconstitutional); *Goetz v. Ansell*, 477 F.2d 636, 637–38 (2d Cir.1973) (holding that a student has the right to remain quietly seated during the pledge of allegiance and cannot be compelled to leave the room if he chooses not to stand); *Frain v. Baron*, 307 F.Supp. 27, 33–34 (E.D.N.Y.1969) (school is enjoined from "excluding [students] from their classrooms during the Pledge of Allegiance, or from treating any student who refuses for reasons of conscience to participate in the Pledge in any different way from those who participate.").

The State Defendants' efforts to distinguish these cases fall short in that they confuse capacity to sue requirements with substantive constitutional rights. The State Defendants argue that *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) supplants the longstanding constitutional rule that students may refrain from reciting the pledge. In *Newdow*, elementary teachers in the Elk Grove Unified School District ("Elk Grove District") led

their students in reciting the pledge each morning. *See id.* at 4–5, 124 S.Ct. at 2305. Newdow, an atheist, non-custodial father of a kindergarten student, brought a mandamus action as his child's next friend, seeking a declaration that the language "under God" violated the Establishment and Free Exercise clauses of the Constitution, as well as an injunction against the Elk Grove District's policy of daily pledge recitation. *See id.* at 8, 124 S.Ct. 2301, 124 S.Ct. at 2306. Newdow contended that his child's daily pledge recitation interfered with his "unrestricted right to inculcate in his daughter-free from governmental interference-the atheistic beliefs he finds persuasive." *Id.* at 15, 124 S.Ct. at 2310. Fatal to Newdow's case, however, was that the child's mother was the custodial parent entrusted with making decisions about the child's legal interests, education and welfare. *See id.* at 10, 124 S.Ct. at 2307. Accordingly, the Court held that Newdow lacked standing to bring this action as his child's next friend. *See id.* at 17–18, 124 S.Ct. at 2312.

The State Defendants contend that *Newdow* stands for the proposition that a child's Pledge participation is a function of a custodial parent or legal guardian's conviction, not the child's. *Newdow* says nothing that supports the State defendants' novel legal assertions, however. Indeed, *Newdow* explicitly recognizes that ability of a *student* to assert constitutional rights against a third party through an action filed by the appropriate next friend. *See id.* at 17, 124 S.Ct. at 2312. Newdow simply lacked standing to serve as his child's next friend. The Court even went on to stress the importance of preserving the child's right to free expression in the context of pledge recitation, noting that "the interests of this parent and this child are not parallel and, indeed, are potentially

in conflict," explaining that the child's mother "tells us that her daughter has no objection to the Pledge, and we are mindful in cases such as this that 'children themselves have constitutionally protectible interests.'" *Id.* at 15, n. 7, 124 S.Ct. at 2311.

Although the plaintiffs in *Barnette, Banks* and *Holloman* were the students' parents acting as their next friends, the next friend mechanism was necessary in those cases because of the students' lack of capacity to sue due to nonage, not because they lacked independent First Amendment rights. Had the parents opposed the students' assertion of their rights, the Federal Rules of Civil Procedure provide the mechanism for the student to vindicate his or her own rights. Pursuant to Rule 17(c), the Court must appoint a guardian ad litem or must make "such other order as it deems proper for the protection of the infant." Fed.R.Civ.P. 17(c). Yet because the rule is permissive, not mandatory, a court may allow a child to sue with or without a guardian or next friend. *See Jacobs v. Board of School Com'rs,* 490 F.2d 601, 604 (7th Cir.1973) (First Amendment challenge by students to school rules on distribution of written materials on school property), *vacated as moot,* 420 U.S. 128, 129, 95 S.Ct. 848, 850, 43 L.Ed.2d 74 (1975).

This Court addressed this issue in *Gonzalez ex rel. Gonzalez v. Reno,* 86 F.Supp.2d 1167 (S.D.Fla.2000), *aff'd,* 212 F.3d 1338 (11th Cir.2000). Elian Gonzalez's maternal relatives sued the Immigration and Naturalization Service ("INS") as his next friend, alleging both constitutional and statutory claims despite his father's objection to the relief sought. This Court ruled:

> A plaintiff's age is not determinative of standing; children possess certain per-

sonal rights that are enforceable in federal court. This is not to say, however, that children necessarily have the capacity to sue on their own behalf. Rule 17(c) of the Federal Rules of Civil Procedure provides mechanisms by which a child who has standing, but who is too young to have capacity to sue, can bring suit through a representative. In this case, the six-year-old Plaintiff alleges that he wants the INS to process applications seeking political asylum for him in the United States despite his father's protestations. To that end[,] Plaintiff brings this suit by and through a purported next friend, pursuant to Rule 17(c). To be clear[,] Plaintiff's standing is a distinct inquiry from that of Lazaro Gonzalez's capacity to act as Plaintiff's next friend.

*Gonzalez*, 86 F.Supp.2d at 1180–81 (S.D.Fla.2000) (footnotes and citations omitted). Elian's father intervened on appeal and asked to be substituted as his son's next friend. The Eleventh Circuit allowed the maternal family to remain as next friend, even though the father objected:

> Also before this Court is a recently filed motion of Intervenor, Juan Miguel Gonzalez, to remove Lazaro Gonzalez as Plaintiff's next friend and to substitute Plaintiff's father as next friend. Notwithstanding that much has happened since Lazaro brought this suit as Plaintiff's next friend, Lazaro (aided by a troop of seasoned lawyers) has completely and steadfastly pressed Plaintiff's claimed rights in the district court and in this Court. We see no powerful reason to make a change at this point. We, therefore, deny Intervenor's motion to remove Lazaro and to substitute Intervenor as next friend for the purposes of this litigation.

*Gonzalez,* 212 F.3d at 1346, n. 7. *See also Ad Hoc Committee of Concerned Teachers on Behalf of Minor and Under–Age Students Attending Greenburgh Eleven Union Free School Dist. v. Greenburgh No. 11 Union Free School Dist.,* 873 F.2d 25, 29–30 (2d Cir.1989) ("Even though the infant or incompetent has a general representative, if the representative is unable or refuses to act or his interests conflict with the person represented, the infant or incompetent may sue in federal court by his next friend or by a guardian ad litem. Courts have always had the power to appoint special representatives under such circumstances, and this power should be considered retained by the federal court in Rule 17(c)"). A student's lack of capacity to sue due to age is easily remedied through Rule 17(c) and is unrelated to the ability of a student to assert his or her own constitutional rights.

The Court does recognize that parents have a fundamental right to control the upbringing of their children. *See Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) (it is a "cardinal" principle that "the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder"); *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) ("it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children"). The right of parents and guardians to direct the education of their children is similarly well-recognized. *See Meyer v. State of Nebraska,* 262 U.S. 390, 400, 43 S.Ct. 625, 627, 67 L.Ed. 1042 (1923) (parents have fundamental right to have their children

taught in German); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925) (invalidating an Oregon statute requiring parents to send their children to public school, holding that the statute "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control."); *Wisconsin v. Yoder*, 406 U.S. 205, 232–33, 92 S.Ct. 1526, 1541–42, 32 L.Ed.2d 15 (1972) (Amish children need not attend public school past eighth grade, as parental liberty to direct the education of their children is fundamental). Yet this right does not translate into a requirement that a parent must give prior approval of a child's exercise of First Amendment rights in a school setting. Were such the case, all the previously cited pledge cases would have so held, as the recognition of parental rights in the educational sphere predated *Barnette* by decades. "Pledge autonomy" has been the state of the law for over 60 years; it is the State Defendants who attempt to create a new rule of constitutional law by requiring prior parental approval of the exercise of First Amendment rights in a school setting.

Fl. Stat. ¶ 1003.44(1), to the extent that it requires a student to obtain a parent's permission to be excused from reciting the pledge of allegiance and requires a student to stand during the pledge of allegiance, is unconstitutional on its face and as applied to Frazier in violation of his First and Fourteenth Amendment rights.

## C. Relief to be Awarded

Whereas the Court has found the statute unconstitutional on its face and as applied to Frazier, Frazier is entitled to the following relief against the School Defendants pursuant to the Consent Order: The School Defendants, and anyone acting in concert with them, are permanently enjoined from enforcing any District custom or practice that requires a student to obtain a parent's permission before being excused from reciting the pledge of allegiance or that requires a student to stand during the pledge of allegiance. The District shall rescind any custom or practice that requires a student to obtain a parent's permission before being excused from reciting the pledge of allegiance or that requires a student to stand during the pledge of allegiance, including references to that policy in its Student and Family Handbook. The District shall also communicate such rescission to all employees of the School District and will specifically instruct its employees that no student may be disciplined in any way for not reciting the pledge of allegiance or for sitting quietly during the pledge of allegiance. The School Board need not otherwise refrain from disciplining a student for disruptive conduct. Finally, the School Defendants, and anyone acting in concert with them, are permanently enjoined from enforcing Fla. Stat. § 1003.44(1) to the extent that it requires a student to obtain a parent's permission before being excused from reciting the pledge of allegiance and require a student to stand during the pledge of allegiance. As to other relief, the District shall issue, and Alexandre shall accept or not contest, a reprimand with written notation in connection with the above-described incident. Finally, judgment to Frazier shall be paid by the School Board in the amount of thirty two thousand five hundred dollars ($32,500.00) in full satisfaction of his claim for any and all damages, attorneys' fees and costs against the School Defendants.

As to the State Defendants, their motion to dismiss is denied. The State Defendants take issue with Frazier's request for "retrospective" relief on sovereign immuni-

ty grounds, but Frazier seeks retrospective relief only in the form of a declaration that his rights were violated. All other relief sought against the State Defendants is declaratory and injunctive relief for the purpose of preventing future First Amendment violations.

## IV. *CONCLUSION*

THE COURT, having considered both the parties' written submissions and oral arguments, hereby

ORDERS AND ADJUDGES that the State Defendants' and Alexandre's Motion to Dismiss, February 9, 2006 [**DE 31**] is DENIED. Frazier, the State Defendants and Alexandre shall submit a Joint Proposed Scheduling Order and Proposed Scheduling Order within ten (10) days of the date of this Order. It is also

ORDERED AND ADJUDGED that Frazier's Motion for Judgment on the Pleadings, treated here as a motion for summary judgment, filed February 21, 2006 [**DE 32**] is GRANTED. Frazier is entitled to the relief set forth herein as agreed to in the Consent Order. An order of final judgment shall issue separately at the conclusion of this litigation.